Russell Greer
689 Vine Street
Murray, Utah 84103
801-616-1067
russmark@gmail.com
Pro Se Litigant

FILED
U.S. DISTRICT COURT

2017 JAN -9 ⊃ 12: 19

DISTRICT OF UTAH

BY:_____
        DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **RUSSELL G. GREER** and **TRICIA CHRISTIE**,<br><br>Plaintiffs<br><br>v.<br><br>**GARY R. HERBERT**, in his official capacity as Governor of the State of Utah; **SEAN D. REYES**, in his official capacity as Attorney General of the State of Utah; **SIM S. GILL**, in his official capacity as District Attorney of the City and County of Salt Lake; **JACKIE BISKUPSKI**, in her official capacity as Mayor of the City of Salt Lake; **BEN McADAMS**, in his official capacity as Mayor of the County of Salt Lake; **KATHY BERG**, in her official capacity as Director of the Division of Commerce; **JAMES ALLRED**, in his official capacity as Business Licensing Manager for the City of Salt Lake; **ROLEN YOSHINAGA**, in his official capacity as Director of Planning and Development for the County of Salt Lake,<br><br>Defendants | **OPPOSITION MOTION TO STATE DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br><br>Case No.: 2:16-cv-01067-DBP<br><br><br>Magistrate Judge Dustin B. Pead |

1

## TABLE OF CONTENTS

OPPOSITION MOTION…………………………………………………………………7

SURVIVING A MOTION TO DISMISS……………………………………………..9

STATE DEFENDANTS ACTED UNDER COLOR OF AUTHORITY……………………..9

STATE FAILS TO CITE ANY CASE LIKE PLAINTIFF'S………………………………10

ALL PROSTITUTION DOES NOT CORRELATE……………………………………...11

PLAINITFF HAS PURSUED NON-JUDICIAL RELIEF……………………………………13

THE STATE DID NOT CITE HONEST FINDINGS…………………………………………13

LACK OF WITNESSES……………………………………………………………16

OUTDATED LAWS…………………………………………………………………...17

STATE AGs BOTH KNOW PLAINTIFF GREER…………………………………………17

GUIDING CASE LAW……………………………………………………………………18

TWO ANYALYSIS APPROACH………………………………………………………21

      Fundamental Liberty Interest Analysis……………………………………………21

      Rational Basis Test…………………………………………………………………24

        A.  The Hypocrisy and the Secondary Effects of Other Sexually Oriented Businesses……………28

        B.  Moral Legislation is Not a Basis for Outlawing Brothels…………………………………………………32

        C.  The State Has Promised to Protect Against Fraud, STDs and Violence…………………………………33

        D.  The State Laws Do Not Achieve Their End Purpose……………………………………………………………34

CONCLUSION…………………………………………………………………………36
Exhibit A………………………………………………………………………………39
Exhibit B……………………………………………………………………………...40
Exhibit C………………………………………………………………………………41
Exhibit D………………………………………………………………………………42
Exhibit E………………………………………………………………………………45

# TABLE OF AUTHORITIES

## STATUTES of STATES and COUNTIES

*An Ordinance Of The City Of South Salt Lake City Council Amending Chapter 5.56 Of The South Salt Lake City Municipal Code, Concerning Licensing Requirements And Regulations For Sexually Oriented Businesses.*

Lyon County Brothel Ordinance

*Nevada Administrative Code 441A010-A325; NAC 441A775-A815.*

Utah Code 76-10-1302(1)(b); 47-1-1; 76-10-1303(1)(b); 76-10-1304(1)(a)(iii); 76-10-1305(1)(a)(e):

## MANDATORY AND PERSUASIVE CASE LAW

*Agency For International Development v. Alliance For Open Society International (2013)*

*Amgen Inc v. F. Hoffman-La Roche Ltd,* 494 F. Supp. 2d 54 (D. Mass 2007)

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)

*Attorney General of Canada v. Bedford* (Canadian Supreme Court 2013)

*Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 582 (1991)

*Bowers v. Hardwick,* 478 US 186 (1986)

*Brown v. Board of Education of Topeka.* (1954).

*Celotex Corp. v. Catrett*, 477 US 317 (1986)

*Coyote Publishing Inc. v. Miller,* 598 F. 3d 592 (9th Circuit Court of Appeals 2010)

*Erotic Serv. Provider Legal Educ. & Research Project v. Gascon,* 2016 WL 1258638 (N.D. Cal. Mar. 31, 2016)

*FCC v. Beach Communications Inc,* 508 US 307, 315 (1993)
*Griffin v. Illinois,* 351 US 12 (1956).

*Griswold v. Connecticut* (1965)

*Lawrence v. Texas* (2003)

*Love v. Superior Court*, 226 Cal. App. 3d 736 (1990)

*Loving v. Virginia* (1967)

*Obergefell v. Hodges* (2015)

*Paris Adult Theater I v. Slaton*, 413 U.S. 49, 69 (1973)

*Reliable Consultants v. Earle* (2008)

*Roe v. Wade* (1973)

*Sandquist v. United States,* 115 F.2d 510 (10th Circuit Court 1940).

*Seegmiller v. Laverkin City,* 528 F.3d 762, 769 (10th Cir. 2008)

*Washington v. Glucksberg* (1997)

*Williams v. Att'y Gen. of Ala.* (" *Williams IV* "), 378 F.3d 1232, 1239 (11th Cir. 2004)

*Williams v. Morgan* (11th Cir. 2007)

**LAW REVIEWS/ARTICLES**

*100 Countries and Their Prostitution Policies.* ProCon.org. (http://prostitution.procon.org/view.resource.php?resourceID=000772).

*13th Amendment to the U.S. Constitution.* Library of Congress website.

*7 Reasons Why America Should Legalize Prostitution.* Business Insider. (2013). (http://www.businessinsider.com/why-america-should-legalize-prostitution-2013-11)

*A Comparison of United States and Canadian Approaches to the Rights of Privacy and Abortion*, 15 BROOK J. INT'L. L. 759, 766–68 (1989).

*America's War on Sex: The Continuing Attack on Love, Lust, and Liberty.* Marty Klein, Ph.D., (2012).

*Applying Lawrence: Teenagers and Crime Against Nature*, 58 Duke L.J. 1825, 1835 (2009).

*Canadian Charter of Rights and Freedoms, Part I of the Constitution Act, 1982, being Schedule B to the Canada Act, 1982, c. 11, s. 7 (U.K.)*

*Consolidated Guidelines on HIV Prevention, Diagnosis, Treatment and Care for Key Populations.* World Health Organization. (2014). (http://www.who.int/hiv/pub/guidelines/keypopulations/en/)

*Flawed Theory and Method in Studies of Prostitution.* Violence Against Women. Pg. 940. Ronald Weizer. (2005).

*Human Trafficking and Regulating Prostitution.* Samuel Lee. New York University School of Law. (2015). (http://lsr.nellco.org/cgi/viewcontent.cgi?article=1303&context=nyu_lewp)

*Inside Bunny Brothel: A Look Behind-the-Doors of Sex Factories Where You Pick from Menus and Can Stay for Up to Four Days.* Mirror. (2016). (http://www.mirror.co.uk/tv/tv-news/inside-bunny-brothel-look-behind-9073466)

*Legalizing Prostitution: From Illicit Vice to Lawful Business.* Ronald Weitzer. University Press. (2012).
    *Marketing Sex: US Legal Brothels and Late Capitalist Consumption.*  Barbara G. Brents.

(2007).

*Paying for Pleasure: Men Who Buy Sex.* Teela Sanders. (2012).

*Pick Up a Penguin.* BBC News. (http://news.bbc.co.uk/2/hi/asia-pacific/60302.stm). (1998).
    *Priorities, Attorney General of Utah.* (http://attorneygeneral.utah.gov/priorities). (See also: *Our Mission, Utah Department of Health).*

*Reason and the Rule of Law: Should Bare Assertions of "Public Morality" Qualify As Legitimate Government Interests for the Purposes of Equal Protection Review?*, Peter M. Cicchino, 87 GEO. L.J. 139, 139 (1998)

*Reid calls on Nevada Legislature to 'Outlaw' Prostitution.* Fox News. (2011).

*Reimagining the Right to Commercial Sex: The Impact of Lawrence v. Texas on Prostitution Statutes".* Belkys Garcia. New York School of Law. (2006)

*Satisfying Lawrence: The Fifth Circuit Strikes Ban on Sex Toy Sales.* Jamie Iguchi. UC Davis School of Law. (2010)

*Strip Club Testimony.* Kelly Holsopple. The Freedom and Justice Center for Prostitution Resources. (2016). (http://www.ayaoutreach.com/uploads/6/1/9/7/61971497/strip_club_study.pdf).
    *Taylorsville Man Allegedly Assaulted Escort Who Refused to Engage in Fetish Games.* Fox 13 News. (2016).  (http://fox13now.com/2016/10/22/taylorsville-man-allegedly-assaulted-escort-who-refused-to-engage-in-fetish-games/).

*The Constitutionality of Polygamy Prohibitions After Lawrence v. Texas: Is Scalia a Punchline or a Prophet?* Joseph Bozzuti, 43 Cath. Law 409, 413, 433-441. (2004)

*The Government's Moral Crusade: America's Campaign Against Venereal Diseases at Home During World War I.* Zachary May. Liberty University. (2015).

*The Many Faces of Sex Work.* Harcourt & Donovan. National Centre in HIV Epidemiology and Clinical Research of the University of New South Wales. (2005).

*The Price of Intimacy.* Stephen P. Dark. Salt Lake City Weekly. (2016). (http://www.cityweekly.net/utah/the-price-of-intimacy/Content?oid=3566816)

*The Viability of Nevada 's Legal Brothels as Models for Regulation and Harm Reduction in Prostitution,* David H. Rodgers, Florida State University (2010)

*U.N. Commission Calls for Legalizing Prostitution Worldwide.* CNSNEWS. Amanda Swysgood. (2012) (http://www.hivlawcommission.org/resources/report/FinalReport-Risks,Rights&Health-EN.pdf)

*What Does Commercial Sex Worker Mean?* Kinkly (https://www.kinkly.com/definition/10704/commercial-sex-worker-csw

## OPPOSITION MOTION

Plaintiff Russell Greer files this Opposition Motion and Supporting Memorandum to

State Defendants' Motion to Dismiss which the State filed December 23, 2016. This Opposition

Motion should be taken into consideration and the State's Motion should be set aside because:

(1) the State fails to cite any case precedent that is identical to Plaintiff's case; (2) their Motion is

based on conjecture and no legal findings; (3) the brothel laws in Utah have seen "No Change

Since 1953" (according to the legislative enactment date on the Utah Code website) and

therefore a more modern review is needed as a lot has happened socially since 1953; and (4)

Plaintiff feels that for a fair determination of whether the As-Applied challenged laws are

constitutional or not, a trial should be held for witnesses and evidence to show how the laws are

unconstitutional.

Also, it appears that the State Defendants are confused as to what Plaintiff is challenging.

To reiterate, the Complaint of Plaintiff clearly challenges As-Applied sections of the statutes of

the Utah Code – not all of the statutes which would constitute a facial challenge.  Plaintiff only

wishes for houses of prostitution to be legal and therefore is only challenging the following As-

Applied laws:

76-10-1302(1)(b):

(1) An individual is guilty of prostitution when the individual:
(b) is an inmate of a house of prostitution;

76-10-1303(1)(b):

(1) A person is guilty of patronizing a prostitute when the person:
(b) enters or remains in a house of prostitution for the purpose of engaging in sexual
activity.

76-10-1304(1)(a)(iii):

(1) A person is guilty of aiding prostitution if the person:
(iii) leases or otherwise permits a place controlled by the actor, alone or in association with
     another, to be used for prostitution or the promotion of prostitution.


76-10-1305(1)(a)(e):

A person is guilty of exploiting prostitution if he:
(e) owns, controls, manages, supervises, or otherwise keeps, alone or in association with
    another, a house of prostitution or a prostitution business.

47-1-1:

  Whoever shall erect, establish, maintain, use, own or lease any building, structure or place,
  for the purpose of lewdness, assignation or prostitution is guilty of nuisance, and such
  building, structure or place, and the ground itself, in or upon which such lewdness,
  assignation or prostitution is conducted, permitted or carried on, and the furniture, fixtures
  and musical instruments therein and the contents thereof are declared a nuisance, and shall
  be enjoined and abated as hereinafter provided.

     Plaintiff can challenge the As-Applied laws by themselves and not the entire statutes

because of the way the statute is written. For example, if one examines the statutes, prostitution

is criminalized either in generalized prostitution or in a house of prostitution. The statutes use the

word "or" or a semi-colon to distinguish the different sections of prostitution. They also use

letters, numbers and Roman numerals to classify each section of the law and therefore gives

Plaintiff the ability to challenge the laws As-Applied. This differs greatly from the case of *Erotic*

*Serv. Provider Legal Educ. & Research Project v. Gascon,* 2016 WL 1258638 (N.D. Cal. Mar.

31, 2016) which sought to strike down all laws surrounding prostitution – a facial challenge --

which is not what Plaintiff is arguing for. The judge in that case called their challenge "broad".

*Id.* "Especially in light of the fact that this is a facial challenge, we are unable to strike down

these regulations." *Coyote Publishing Inc. v. Miller,* 598 F. 3d 592 (9th Circuit Court of Appeals

2010) (Appeals Court reversed decision on brothel advertising in light of it being a facial

8

challenge). Plaintiff does not seek such a broad challenge. His challenge is simple and direct with a straightforward constitutional, federal question: is there either constitutional protection in legalizing brothels or a lack of a rational basis (no compelling governmental interest) in prohibiting brothels?

## SURVIVING A MOTION TO DISMISS

As State Defendants argued, a complaint must contain "sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.' *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Plaintiff, as shown in his Complaint, and will show in this Opposition Motion, established that the named State Defendants (Herbert, Reyes & Berg) acted under color of authority by enforcing the As Applied laws. Furthermore, Plaintiff argued two different approaches for why the laws were unconstitutional: (1) he argued the Fundamental Liberty Interest argument approach, considering *Obergefell v. Hodges,* and (2) he also argued the rational basis approach which *Lawrence v. Texas* used. Thus, he survives a Motion to Dismiss because he has allowed the Court to draw a reasonable interference that the State Defendants acted under color of authority and that the laws are unconstitutional by using two different analysis to find the laws unconstitutional.

## STATE DEFENDANTS ACTED UNDER COLOR OF AUTHORITY

The State Defendants acted under color of authority in this case and have denied Greer of multiple rights: the right to run a business; the right of privacy; the right to associate; equal protection. Even those all aside, the laws that they enforce have no rational basis and do not further a compelling state interest. Instead, their laws cause irreproachable harm. To be more

specific, Defendant Herbert is in charge of overseeing the legislation of this state and ensures that unconstitutional laws stay intact. He fails to see or turns a blind eye to the fact that prostitution still flourishes in the State. Because of his failure to act on laws, he has instructed State employees like Defendant Berg to not act and observe these laws. Defendant Berg approved Greer's business license for a brothel in December 2015, but either due to administrative laziness or a change of thought, realized what her office had approved and rescinded the brothel license in January of 2016. That hurt Greer so much and denied him a right to open a business that he had a business plan for. That is the biggest argument Greer has and the biggest injury he has to show. He has been tempted to engage in illegal activity, but if he did that, Defendant Reyes would prosecute Greer under the laws Reyes has sworn to uphold.

## STATE FAILS TO CITE ANY CASE LIKE PLAINTIFF'S

Plaintiff also feels that this case should overcome a Motion to Dismiss because State Defendants failed to cite any legal case like Plaintiff's. *Celotex Corp. v. Catrett*, 477 US 317 (1986) (Respondent had the burden to show that Petitioner lacked any legal claims to bring forth a case). The State cited many cases, yes, but all had to do with prostitution occurring with clients in their homes or in public. None of the cases cited, except one, had to do with brothels or establishing a brothel or trying to go the legal way. All of the cases, except *Coyote Publishing*, dealt with prostitutes appealing their criminal convictions; cases involving people who willfully broke the law instead of petitioning the court with a constitutional challenge. Even in the ESPLER case, the Plaintiffs hide their identities to avoid prosecution because they continue to engage in criminal activity. Plaintiff has followed the law to the best of his ability and legally tried going through the legislative route to make this legal. He has since refrained from engaging in any illegal activity and has been giving his all to make this legal. But he has gone almost a

year without sex – that is the troubling part. Plaintiff's challenge is not a broad constitutional

challenge, either, but a simple, straightforward challenge. Affirmatively, *Coyote Publ'g, Inc. v.*

*Miller,* 598 F.3d (2010) was the only case that the State cited that had to do with brothels. But

even in that regard, the 9th Circuit Court, in *Coyote,* did not determine whether brothels should be

legalized in counties that did not allow brothels. Rather, the Court determined whether

prohibiting the advertising of brothels was a violation of the First Amendment. Therefore, no

case is like plaintiff's and his case should be heard.

## ALL PROSTITUTION DOES NOT CORRELATE

Objectively speaking, upon looking at the statutes of the Utah Code, the Code – as

discussed earlier – separates different areas of prostitution, primarily: brothels and non-brothel

prostitution. The legislature obviously intended to separate prostitution into these two categories

because they knew that prostitution was a broad concept. If they thought prostitution was all

inclusive, then they should have formed the statute without any caveat letters. All of the cases

that the State cited had to do with the category of non-brothel prostitution which is generally

uncontrolled and has more violence in it. Brothel prostitution follows some kind of control,

whether legal or illegal, and has very little, if any, violence attached to it than compared to

prostitution that occurs outdoors. *The Viability of Nevada 's Legal Brothels as Models for*

*Regulation and Harm Reduction in Prostitution,* David H. Rodgers, Florida State University

(2010) (In-depth study shows how legalized brothels were safe for both worker and customer.

Study even showed that when illegal, prostitution that occurs inside, is far more safe than

outdoor prostitution. The study cites from highly reviewed researchers and draws analysis from

more than twenty countries). It would be unfair and quite unlawful for cases that have nothing to

do with brothels to be applied to the laws the Plaintiff is arguing based on the fact that the Utah

Code separates brothels as a separate criminal act than other acts of prostitution. In fact, the case of *Love v. Superior Court*, 226 Cal. App. 3d 736 (1990) (mandatory AIDS testing of those arrested for prostitution was constitutional), which the State cited, supports what plaintiff is arguing. With legalization and regulation of prostitution, AIDS testing would be mandatory, as seen with Nevada's brothels. See, *Nevada Administrative Code 441A010-A325; NAC 441A775-A815.*

Prostitution is so broad that researchers have identified 25 different types of prostitution: indirect and direct forms of prostitution. *The Many Faces of Sex Work*. Harcourt & Donovan. National Centre in HIV Epidemiology and Clinical Research of the University of New South Wales. (2005). Amongst the many types of sex work they list are direct forms such as brothels, street, escort, and in-direct forms such as Bondage Domination Slave Master (more commonly known as BDSM), lap dancing and massage parlors. *Id.* Many of these in-direct forms of prostitution occur within the State of Utah as the genitals of either participant is touched and are not prosecuted. Even escort companies in Utah (The Doll House, Utah Party Girls, Escort Companions, etc), which escorting is listed as a direct form of prostitution, freely flourishes in the State without prosecution. Even buying a non-prostitute partner (a girlfriend; a first date; or even a spouse) dinner with the expectation of sex is technically prostitution (*Utah Code 76-10-1302(1)(a): engages in sex with another for the functional equivalent of a fee.)* If the State is going to use cases that have nothing to do with brothels as a form of legal precedent to dismiss Plaintiff's case, then shouldn't their cited cases be used to shut down the direct and in-direct forms of prostitution and arrest consenting non-commercial partners? "Such a law would make the constitutional promise of a fair trial a worthless thing. Notice, the right to be heard, and the right to counsel would...be meaningless..." *Griffin v. Illinois,* 351 US 12 (1956). Indeed, a trial is

warranted to determine whether there is more constitutional protection or rational basis in brothels than in non-brothel prostitution, as it would be unfair to cite non-brothel prostitution as binding precedent to not allow plaintiff to have a trial.

### PLAINTIFF HAS PURSUED NON-JUDICIAL RELIEF

Another reason that Plaintiff pleads for the case to not be dismissed is because he has sought non-judicial relief. In fact, when he first came out about his intentions of challenging the laws, he reached out to State representatives to help him. He reached out many times to try setting up a meeting in hopes of possibly starting a lobby to overturn the laws and he got no response from his representatives. Next, he started a petition on change.org to overturn the laws and his petition saw very little movement. Plaintiff has not found the trick at "trending". He tried going the legislative route by getting a business license to open a brothel and that was shut down by the State (which is what started this entire cause of action). He can't even get the news to carry his sincere stories about challenging these laws to bring public attention to it. It's as if every opportunity has been closed on him. He was left with filing this constitutional challenge not as the "easy way" to overturn the laws, but as the only way he had left. He asks that he is given the chance to present his arguments at trial with expert witnesses and business models of the brothel he would like opened.

### THE STATE DID NOT CITE HONEST FINDINGS

The State of Utah claimed that no good comes from prostitution. *State Defendants' Motion to Dismiss, Page 14*. In arguing for dismissal in their Motion to Dismiss, they cite half-truths and bald faced lies. They do not cite neutral findings. They quote from Melissa Farley, who is a staunch anti-adult entertainment researcher and whose zealousness caused her to go into an adult book store and light several pornographic magazines on fire. In fact, she was arrested 13

different times in 9 different states for these continuous same actions. *America's War on Sex: The Continuing Attack on Love, Lust, and Liberty.* Marty Klein, Ph.D., (2012). It really helps to know whose sources are cited. A common complaint about Ms. Farley is that none of her work has been peer-reviewed and that her non-profit organization, *Prostitution Research and Education*, creates a conflict of interest for her because she founded it. A fellow researcher says this about Melissa Farley: "Moreover, most of the empirical studies she cites are deeply flawed methodologically. Sampling biases and other procedural problems, in greater or lesser degree, pervade her literature, yet Farley never addresses this problem because that might undermine her sweeping claims." *Flawed Theory and Method in Studies of Prostitution.* Violence Against Women. Pg. 940. Ronald Weizer. (2005). Who's to say that the State has presented much more skewed research? In fact, they have.

The State also seems to ignore the complete regulation process of the Nevada brothels. For each county in Nevada that has legalized prostitution, they have a county ordinance that the worker and brothel owner have to abide by just like any occupation has ordinances (see Lyon County's, where the Bunny Ranch is incorporated, Brothel Ordinance as example: http://prostitution.procon.org/sourcefiles/LyonCountyTitle5Chap3Prostitution.pdf). The broad claims the State presents that all women are victims and that children are trafficked into prostitution, while may be true in illegal in situations, is false in legalized situations. In fact, each prostitute wanting to work at a Nevada brothel is given a work card by the local sheriff. *Lyon County Brothel Ord. 336, 2-2-90*. All prostitutes, who wish to work in a brothel, must: (1) give their real names and alias; (2) their age, address, physical description; (3) a recent photo and full set of fingerprints; (4) employment history; (5) address history; (6) complete record of criminal history; (7) a 50.00 fee deposit; (8) a medical release form for the issuance of STD test results.

*Lyon County Brothel Ord. 5.03.14(A)(1)(a).* The same is true for other employees that are not prostitutes such as bartenders, door greeters, cashiers: they all must be licensed. The brothels take regulation seriously. In fact, it makes it hard for unlicensed people to be in the brothels. In addition to regulations on county and state level, the brothels have guards; security cameras; and panic buttons in the girls' rooms. They appeal to the communities that they are in. *Marketing Sex: US Legal Brothels and Late Capitalist Consumption.* Barbara G. Brents. (2007).

Therefore, the State has completely ignored the legalization process of Nevada and has ignored the fact that several times the legislature of Nevada has been given the chance to abolish brothels, but has declined to do so each time because they know it will cause more harm than good. *Reid calls on Nevada Legislature to 'Outlaw' Prostitution.* Fox News. (2011). If prostitution was truly as evil as the State wants the Court to believe, then the legislature would have repealed the law by now. Or the federal government would have stepped in if it truly was a 13th Amendment violation which Plaintiff cannot believe that the State even used that argument since the 13th Amendment applies to slavery and not consenting adults. *13th Amendment to the U.S. Constitution.* Library of Congress website. (https://www.loc.gov/rr/program/bib/ourdocs/13thamendment.html). The State doesn't even attempt to explain why legalization does not work nor does the State try to show any flaws with Nevada's system – the system Greer is basing his model off of. Instead, they cover all prostitution (legal, illegal, etc) with a broad blanket and skew results. Defendants have a footnote on the bottom of page 14 in their Motion and use the fact that 49 out of 50 states have banned prostitution, though, they ignore the fact that brothels were generally legal before the turn of the twentieth century due to a moral crusade led by religionists which the same crusade prohibited alcohol for the first twenty years of the twentieth century. *The Government's Moral Crusade:*

*America's Campaign Against Venereal Diseases at Home During World War I.* Zachary May. Liberty University. (2015). (http://digitalcommons.liberty.edu/cgi/viewcontent.cgi?article=1001&context=ljh). (Argues that banning prostitution did more harm than good). *Lawrence* argued that basing legislation off of moral welfare is not a sufficient basis to outlaw conduct. See *Lawrence v. Texas* (2003). The State's arguments should not even be considered because it appears they found what sounded best to them and randomly placed the arguments in their Motion. Their arguments are all based on conjecture and second hand results and therefore should be barred from having a Motion to Dismiss let alone a Summary Judgement.

Plaintiff is offended by the State because they have slandered his friends. He knows many prostitutes who are in it freely and many brothel owners who legally operate brothels. The State has never stepped a foot in a brothel; their sources they cite from have never stepped a foot in a brothel either. Therefore, their arguments are of little value.

## LACK OF WITNESSES

As far as Plaintiff is aware, the State has no witnesses or credible evidence to back up their claims. To the contrary, Plaintiff has many expert witnesses who want to testify at the trial.

Amongst his witnesses are Dennis Hof, the famed owner of seven legal brothels in Nevada which have all boosted the Nevada economy and has used the funds of his brothels to donate to local schools and hospitals. Plaintiff also seeks to call upon current legal prostitutes in Nevada who come from all over the country and have different stories for why they have chosen to enter prostitution and how legalized brothels could benefit Utah. Plaintiff also seeks to have a former street worker testify about the dangers of the streets. This former street worker was a witness to the brutal torture of a sex worker and testifies that that wouldn't have happened in a legal

16

brothel. Plaintiff also seeks to call upon law professors who have studied prostitution. Greer also

will call upon a Lyon County administrative member to testify how they keep people from being

trafficked into the brothels. The State of Utah, on the other hand, has no witnesses to counter

Greer's witnesses therefore they have no standing to file a Motion to Dismiss.

## OUTDATED LAWS

The brothel laws, particularly those found in 47-1-1 of the Utah Code, are outdated. The

Code itself says that the laws have had "No Change Since 1953". Morally, a lot has happened

since 1953. Racial segregation was found unconstitutional. *Brown v. Board of Education of*

*Topeka*. (1954). Interracial marriages became legal in 1967 with *Loving v. Virginia*. Using the

penumbras of the Constitution, abortion was legalized in 1973 with *Roe v. Wade*. That case

established that there was indeed a right to privacy. In 2003, in strongest support to Plaintiff's

case, *Lawrence v. Texas* (2003), the Court held that one had the liberty to choose how to conduct

their private sex life. While a fundamental right was not entirely argued, a rational basis test was

established with ambiguity allowing other cases to draw upon *Lawrence*. While the Court held

that their ruling did not apply to prostitution and gay marriage, 12 years later, gay marriage was

legalized in *Obergefell v. Hodges* (2015) with the Court relying heavily on *Lawrence*. These

three major cases (Roe, Obergefell & Lawrence) pave the way for Plaintiff, and also put the law

at the need for review, as the concept of privacy was not established when the laws were enacted.

## STATE ASSISTANT AGs BOTH KNOW GREER AND HIS STURGGLES

Plaintiff finds the State's lack of empathy towards his plight demeaning. Both Wolf and

Soderberg know Plaintiff Greer from when he interned in their division in the Summer of 2015

as part of his paralegal degree requirement. During his time interning at the Litigation Division,

he confided in Soderberg and told Soderberg the discrimination he faces in his day to day

activities and how finding a job in a law firm was difficult due to discrimination. He also told

Wolf about discrimination in an email. So, it is surprising that they would be so callous to his

plight and dismiss this case that involves not just physical harm, but also emotional harm and

damages. *Paying for Pleasure: Men Who Buy Sex.* Teela Sanders. (2012). (In-depth researcher

conducted, over a ten-year period, a review of the different men who pay sex workers and their

motivations for buying such services. The review is fair, balanced, and proves the thesis of the

book: that men pay for sex to fill the gap in their lives whether it be emotional or physical).

## GUIDING CASE LAW

Besides the guiding ambiguity of *Lawrence* (which will be touched upon in the rational

basis review analysis), there is both mandatory and persuasive Supreme Court case law that

gives Plaintiff standing to overcome the State's Motion to Dismiss. In *Agency For International*

*Development v. Alliance For Open Society International (2013)*, the United States Supreme

Court ruled that prohibiting NGOs (Nongovernmental Organizations) from receiving

Governmental aid for not avowing an Anti-prostitution stance was a violation of their 1st

amendment right to freedom of speech. *Agency* created a precedent for plaintiff's case. It allowed

for another option to be opened up aside from the Government's beliefs and laws. If a person can

freely choose to give money to condone and help those in prostitution (or take a neutral stance),

then why can't a person believe that regulated prostitution can help protect those wanting to be in

it and implement a U.S. based model that helps contain prostitution and that has demonstrated an

incredibly great safety record? Ignoring a problem does not make it go away nor does arresting

persons involved in it or imposing laws that try to deter those who want to pay or sell. Brothels

can help curb many of the ills facing prostitution whether the "morally upright" wish to

acknowledge such a fact. This is where the rational basis test would come in to see if Greer's plans for the *Mile High Neon* could be utilized.

The second case that guides Plaintiff's case was decided by the Canadian Supreme Court in 2013. In *Attorney General of Canada v. Bedford* (2013), the Canadian Supreme Court ruled that the country's laws against brothels were unconstitutional. While the ruling comes from a high court in another country, it is a persuasive ruling because their legal system is not too different than the American system. They are a Common-Law country like the United States which relies on case law as precedent. The Court argues that banning brothels violates the amendment in the Canadian Constitution that is similar to the United States' 14th amendment. *Canadian Charter of Rights and Freedoms, Part I of the Constitution Act, 1982, being Schedule B to the Canada Act, 1982, c. 11, s. 7 (U.K.)*; Jennifer Coates, *A Comparison of United States and Canadian Approaches to the Rights of Privacy and Abortion*, 15 BROOK J. INT'L. L. 759, 766–68 (1989). The Court, in deciding the case, wrote: "The focus [of the case] is on security of the person, not liberty...It seems...that the real gravamen of the complaint is not that breaking the law engages the applicants' liberty, but rather that compliance with the laws infringes the applicants' security of the person." *Id at footnote rationale.* The unanimous Court ruling made a point of saying: "Parliament has the power to regulate against nuisances, but not at the cost of the health, safety and lives of prostitutes." *Id.* This can be applied to the State legislature. The State can enforce and create laws, but they cannot do so when it robs the citizens of this State of security. This case is quite guiding because Courts often turn to see how similar countries have acted in similar matters when there is no guiding case law in the jurisdiction. Seeing that no case is like Plaintiff's in this jurisdiction, *Bedford* should be guiding authority for this Court to act upon.

Another guiding legal authority is the United Nations. Several sub-groups of the United Nations support the legalization of prostitution and the implementation of brothels such as the World Health Organization (WHO), the leading authority in the United Nations for health-related matters, which argues that legalizing brothels will help prevent HIV with mandatory condom use and policies that protect sex workers and their customers. *Consolidated Guidelines on HIV Prevention, Diagnosis, Treatment and Care for Key Populations.* World Health Organization. (2014). (http://www.who.int/hiv/pub/guidelines/keypopulations/en/). It should be noted that WHO was instrumental in the eradication of smallpox and handling the Ebola crisis so therefore their judgement should be given significant authority. The Supreme Court has turned to the United Nations in the past to help guide them in decisions (see *Lawrence at 574*). Another UN commission that supports legalization of brothels is UNAIDS which says: "Laws that criminalize and dehumanize populations at the highest risk of HIV--including men who have sex with men, sex workers, transgender people and injecting drug users--drive people underground, away from essential health services and heighten their risk of HIV." *U.N. Commission Calls for Legalizing Prostitution Worldwide.* CNSNEWS. Amanda Swysgood. (2012). (See the commission's full report here: http://www.hivlawcommission.org/resources/report/FinalReport-Risks,Rights&Health-EN.pdf). Accordingly, while the State can argue that sex workers have high rates of AIDS, it really is the State's own fault for the epidemic and their flawed laws that do not work in preventing the disease or stopping the conduct, per the report. Criminalization does not work. *7 Reasons Why America Should Legalize Prostitution.* Business Insider. (2013). (http://www.businessinsider.com/why-america-should-legalize-prostitution-2013-11) (Skeptical news reporters visit a Nevada brothel and have their expectations broken from being against prostitution to supporting legalization). Each listed case and policy from established legal cases

should act as guidance for this case to overcome a Motion to Dismiss and be allowed a trial as it shows that Plaintiff has stated claims for which relief can be sought.

## TWO ANALYSIS APPROACH

As stated in Plaintiff's complaint, either analysis ("fundamental liberty" review or "rational basis" review) can be found to overturn the As Applied laws that Plaintiff is challenging.

### Fundamental Liberty Interest Analysis

The Supreme Court has outlined the framework for evaluating a claim to the existence of a fundamental right. This "established method of substantive-due-process analysis has two primary features." *Glucksberg,* 521 U.S. at 720. First, the asserted "fundamental right" (or "fundamental liberty") must be "deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* (internal citations and quotations omitted). Second, the analysis requires "a careful description' of the asserted fundamental liberty interest." (The 10th Circuit applies this *Glucksberg* framework by addressing the second prong first to narrow the inquiry: "a plaintiff asserting a substantive due process right must both (1) carefully describe the right and its scope; and (2) show how the right as described fits within the Constitution's notions of ordered liberty." *Seegmiller v. Laverkin City,* 528 F.3d 762, 769 (10th Cir. 2008); *cf. Williams v. Att'y Gen. of Ala.* (" *Williams IV* "), 378 F.3d 1232, 1239 (11th Cir. 2004) ("First, in analyzing a request for recognition of a new fundamental right, or extension of an existing one, we must begin with a careful description of the asserted right.") (internal quotation marks and citation omitted). As shown in Plaintiff's complaint, he has demonstrated that commercial sex that takes place in brothels is deeply rooted in this nation's history. It wasn't until the early 1900s that prostitution

became outlawed in part because it was "immoral" which goes against *Lawrence* and other cases that says immorality is not a basis to outlaw rights. This is presumed to be a reason for the State enacting the brothel bans. *Reliable Consultants v. Earle* (2008) ("Just as in *Lawrence*, the State here wants to use its laws to enforce a public moral code by restricting private intimate conduct…because the State is morally opposed to a certain type of consensual private intimate conduct. This is an insufficient justification for the statute after *Lawrence*." When a right isn't as obvious a right such as marriage or procreation, previous existing rights such as procreation are extended to see if a new right can be created. *Griswold v. Connecticut* (1965) (The Court in this case agreed that the right to marry could be extended to include the right to contraceptive use since apart of marriage is deciding whether to have children). This was again the case in *Roe v. Wade* (1973) when the Court determined that the right to privacy was a right under the penumbras of constitution.

To satisfy the second part of the test, a careful description of the asserted right must be shown. Plaintiff believes that the right to abortion and the right to marriage can be extended to commercial sex. The reason he believes that marriage and abortion can be extended to commercial sex is that a person can already make decisions with two intimate life choices. Both choices include sex. The Court must reasonably understand that Plaintiff, and people similarly situated as Plaintiff, cannot find partners to marry; to procreate with; to rear a family with; so that they must have a legal place to go to pay somebody to be their partner for an agreed upon time. While no Court – yet – has deemed the right to sex a fundamental right, the dissenting view in *Bowers* supports that determining intimate life choices should be a fundamental right: "This case is no more about "a fundamental right to engage in homosexual sodomy," as the Court purports to declare, *ante,* at 191, than <u>*Stanley* v. *Georgia,* 394 U. S. 557 (1969),</u> was about a

fundamental right to watch obscene movies, or *Katz* v. *United States,* 389 U. S. 347 (1967), was

about a fundamental right to place interstate bets from a telephone booth. Rather, this case is

about "the most comprehensive of rights and the right most valued by civilized men," namely,

"the right to be let alone." *Olmstead* v. *United States,* 277 U. S. 438, 478 (1928) (Brandeis, J.,

dissenting)." *Bowers v. Hardwick,* 478 US 186 (1986) (Dissent at 199). The dissent in *Bowers*

goes onto further write: "The Court has referred to such decisions as implicating `basic values,'

as being `fundamental,' and as being dignified by history and tradition. The character of the

Court's language in these cases brings to mind the origins of the American heritage of freedom."

*Id at 217.* The recent Supreme Court ruling in *Obergefell* supports the dissent in *Bowers* and

Plaintiff's argument that the right to privacy found in marriage and abortion can be extended to

brothels. "In addition, these liberties extend to certain personal choices central to individual

dignity and autonomy, including intimate choices that define personal identity and beliefs."

*Obergefell v. Hodeges* (2015). Being with sex workers is central to Plaintiff's well being. As

stated in his Complaint, Plaintiff went to a Nevada brothel and had a complete change in his

thoughts and feelings; he went from being sad to happy. He has invested so much in being with

sex workers because they have boosted his self-esteem. Not being allowed to have the freedom

to pay another adult for sex in a safe, legal place "would disparage [plaintiff's] choices and

diminish [his] personhood to deny [him] this right." *Id.* But Plaintiff believes that commercial

sex must be limited to brothels -- just as abortion was limited to meet state safety interests. *Roe*

*at 154* (ruled that the right to privacy was not "absolute", but still allowed abortion under the

right to privacy). As will be shown in the rational basis arguments, there is no compelling state

interest in keeping brothels banned namely because of the hypocrisy of other sexually oriented

businesses being operated; the state's interest in protecting against fraud, STDs and human

trafficking which brothels can prevent; the distance to where other brothels are; and the simple fact that the state's law does not achieve its purpose. But Plaintiff believes that the bulk of his argument is in the rational basis test and that his case hinges on that because that is more well-defined than the fundamental interest test. He shows the first test to add support to his arguments.

### Rational Basis test

If the asserted right does not qualify as "fundamental" under the fundamental analysis, "rational basis review" applies. For rational basis review, *Lawrence v. Texas* is the guiding standard for such review. Plaintiff, the challenging party, realizes that he bears the burden to negate "every conceivable basis" for why the State laws are unconstitutional. *FCC v. Beach Communications Inc,* 508 US 307, 315 (1993). The standard for rational basis review is to find whether challenged laws further a governmental purpose. The ambiguity of *Lawrence* guides Plaintiff with the words of Justice Kennedy saying: "As the Constitution endures, persons in every generation can invoke its principles in their own search for greater freedom." *Lawrence v. Texas*, 539 US 579 (2003). While the Court in Lawrence does say that the ruling does not apply to prostitution, the Court of Plaintiff's case must keep in mind that prostitution is vague and therefore must be analyzed to see if rights can extend to brothels than to other forms of prostitution, and also to keep in mind that *Lawrence* specifically stated that it did not apply to gay marriage as well ("The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. *It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter."* [Emphasis added]. *Obergefell*, though, relies heavily on *Lawrence*, citing it 7 times.

Thus, the words of Justice Kennedy ring true that every generation can use the constitution to find liberty for themselves. The majority's strongest argument for Plaintiff is when they write that there is "an emerging awareness that liberty gives substantial protection to adult persons in deciding how to conduct their private lives in *matters pertaining to sex." Id at 572. (*Read, "*Reimagining the Right to Commercial Sex: The Impact of Lawrence v. Texas on Prostitution Statutes".* Belkys Garcia. New York School of Law. (2006) Study gives in-depth analysis of the *Lawrence* decision and argues that the ambiguity of *Lawrence* legalizes prostitution).

Further, Justice Scalia's dissent also paves the way for Plaintiff's case, as Scalia cautions that the majority's opinion causes a "a massive disruption of the current social order" and "calls into question [every other morality based law]". *Lawrence v. Texas*, 539 US 591 (2003). (See *The Constitutionality of Polygamy Prohibitions After Lawrence v. Texas: Is Scalia a Punchline or a Prophet?* Joseph Bozzuti, 43 Cath. Law 409, 413, 433-441. (2004). The author argues that *Lawrence* "may very well have left all moral-based legislation vulnerable to constitutional attack." Scalia specifically argues that *Lawrence* calls into question prostitution laws because of the impossibility of differentiating between sodomy and other moral laws. *Id at 590.* Despite opposition from defendants, *Lawrence* failed to limit its holding to just homosexual sex and has thus given rights to many who have used the case law for their own from fornication and same-sex marriage to sex toys. *Applying Lawrence: Teenagers and Crime Against Nature;* 58 Duke L.J. 1825, 1835 (2009). The Fifth Circuit in *Reliable Consultants* held that *Lawrence* gives "precise instructions" that morality is an insufficient state interest to sustain laws affecting sexual privacy. *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 746-47 (5th Cir. 2008). Realizing that *Reliable Consultants* conflicts with the 11th Circuit's ruling on sex toys (*Williams v. Morgan* (11th Cir. 2007) which upheld bans on sex toys, the Fifth Circuit's application of *Lawrence* to a

sexual device statute should be superior to that of the Eleventh Circuit for three reasons, according to *Satisfying Lawrence: The Fifth Circuit Strikes Ban on Sex Toy Sales.* Jamie Iguchi. UC Davis School of Law. (2010). The three reasons are: (1) In *Williams,* the Eleventh Circuit mistakenly interpreted *Lawrence* as a rational basis case, though, the lack of using the *Glucksberg* analysis made it not a fundamental review. So, the analysis is unclear, something Justice Scalia criticized. Conversely*, Reliable Consultants* correctly applied *Lawrence* as establishing due process protection for the use of sex toys. (2) Principles from contraception cases like *Roe* show that restricting sales of sexual devices unnecessarily and impermissibly restricts their use because the majority in *Lawrence* cited the same rationale as contraceptive cases. (3) Public health considerations support *Reliable Consultants. Id.* The Supreme Court would uphold *Reliable Consultants* over *Williams* if the two were to reach the Supreme Court for review. With this analysis, the State cannot use *Williams* to suppress Plaintiff's case. *State Defendant's Motion to Dismiss, Page 10. Reliable Consultants* boosts Plaintiff's case, as it dealt with commercial sex. See *Amgen Inc v. F. Hoffman-La Roche Ltd,* 494 F. Supp. 2d 54 (D. Mass 2007) (Explained that a "sister court's", different jurisdiction, ruling can be followed when there is a similar fact pattern). The fact pattern in *Reliable Consultants* is similar to Plaintiff's because there is commercial activity taking place with the involvement of sex.

In regards to commercial sex, *Lawrence* did not distinguish commercial and non-commercial; public or private. The *Lawrence Court* only referred to "particular practices" and morality not being a basis for banning those ambiguous practices. *Lawrence at 577-578* which has left them open for interpretation as shown with *Reliable Consultants.* See *Reason and the Rule of Law: Should Bare Assertions of "Public Morality" Qualify As Legitimate Government Interests for the Purposes of Equal Protection Review?*, Peter M. Cicchino, 87 GEO. L.J. 139,

139 (1998) (arguing bare assertion of public morality cannot serve as legitimate governmental interest). Whether one has sex in a brothel or sex with a sex toy is of little difference because in the end, it's "commercial sex". It's all inclusive. *What Does Commercial Sex Worker Mean?* Kinkly (https://www.kinkly.com/definition/10704/commercial-sex-worker-csw) (Argues that the term "commercial sex worker" is broad because it can encompass not just prostitutes, but those who work in the sex entertainment business which can be those who sell sex toys or they can be escorts or strippers). *Lawrence* must be read "broadly" to find that it encompasses *commercial* sex, something *Lawrence* criticized the *Bowers* court for failing to do with sodomy before *Bowers* was turned over. *Lawrence at 566-567.* The notion that sexual interactions under 10 hours are not protected is absurd, as the State argues. That's what *Lawrence* was all about – protecting one night stands. Not only were bans on homosexual sodomy rendered unconstitutional; heterosexual bans were rendered invalid as well, as were fornication laws. There is no difference between buying dinner for a partner with the expectation of sex than paying a consenting adult for sex. The State has failed to distinguish the difference between "Tinder hook ups" and "brothel hook ups". The State doesn't prosecute hook up apps yet brothels and prostitution is prosecuted. It is a hypocritical, absurd law. With that said, the objective is to find that the State does not have a compelling reason for keeping brothel laws such as was the holding in *Lawrence*: the state of Texas did not have a legitimate interest in keeping sodomy laws.

Plaintiff now presents his arguments for rational basis review for why the As Applied brothel laws of the Utah Code are unconstitutional: the hypocrisy of other sexually oriented businesses being operated; the state's interest in protecting against fraud, STDs and human

27

trafficking which brothels can prevent; the distance to where other brothels are; and the simple fact that the state's law does not achieve its purpose.

### A. The Hypocrisy and the Secondary Effects of Other Sexually Oriented Businesses

As Plaintiff stated in his Complaint, the State does not have a basis to ban brothels because it is hypocritical since other commercial sex operations are in full, legal operation within the State. Refer to cited link to *Kinkly* about Commercial Sex being a broad, inclusive term. In 2012, the County of Salt Lake conducted a study and found that sexually oriented businesses have secondary effects that lead to prostitution. *An Ordinance Of The City Of South Salt Lake City Council Amending Chapter 5.56 Of The South Salt Lake City Municipal Code, Concerning Licensing Requirements And Regulations For Sexually Oriented Businesses.* (2012.09.21_South_Salt_Lake_SOB-Ord-final-mr.pdf). ("Based on evidence of the adverse secondary effects of adult uses presented in hearings and in reports made available to the City Council, and on findings, interpretations, and narrowing constructions incorporated in the cases [cites over 50 different cases associated with adult conduct], Sexually oriented businesses, as a category of commercial uses, are associated with a wide variety of adverse secondary effects including, but not limited to, personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking, negative impacts on surrounding properties, urban blight, noise, traffic, litter, and sexual assault and exploitation. Alcohol consumption impairs judgment and lowers inhibitions, thereby increasing the risk of adverse secondary effects.... Each of the foregoing negative secondary effects constitutes a harm which the City has a substantial government interest in preventing and/or abating. This substantial government interest in preventing secondary effects, which is the City's

rationale for this chapter, exists independent of any comparative analysis between sexually oriented and nonsexually oriented businesses. Additionally, the City's interest in regulating sexually oriented businesses extends to preventing future secondary effects of either current or future sexually oriented businesses that may locate in the City. The City finds that the cases and documentation relied on in this chapter are reasonably believed to be relevant to said secondary effects.") *Id.*

Surely, the State would outlaw sexually oriented businesses based upon the in-depth research into finding harmful secondary effects. Courts, in the past, have upheld bans on sexually oriented businesses due to fear of secondary effects. See: *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 582 (1991) (Souter, J., concurring) (concurring with plurality to uphold Indiana's public nudity statute, but on grounds of preventing secondary effects of adult entertainment establishments); *Paris Adult Theater I v. Slaton*, 413 U.S. 49, 69 (1973) (upholding Georgia obscenity statute). But the State upholds laws that allows sexually oriented businesses such as strip clubs, sex toy stores, and escort services. These businesses can function, in the midst of secondary effects, due to having licenses and following regulations. *City of South Salt Lake Ordinance on Sexually Oriented Businesses 5.56.030.* Ironically, the Nevada brothels are able to function the same way: having licenses and following regulations. Therefore, with the previously established fact that Nevada brothels run on regulations and the current fact that Utah's sexually oriented businesses have secondary effects, but are still able to operate, Plaintiff finds this to be hypocritical and it gives the State zero standing to withhold a business license to Plaintiff based on the fact that a secondary effect of strip clubs is prostitution, according to the City's findings. It would be safe and business-wise to either ban all sexually oriented businesses or allow a place for where prostitution can legally occur. See Complaint and *Exhibit A* where State Defendant

Berg withdrew Greer's business registration after it was approved. The State argued in their Motion to Dismiss that brothels lead to violence against women and trafficking. See page 12. Those are the secondary effects of *illegal* prostitution, as the State failed to cite those findings in legal brothels which is another dishonest statistic the State cited in their link on Page 12: (https://2001-2009.state.gov/r/pa/ei/rls/38790.htm). The link they use for their trafficking statistic deals with illegal prostitution and nowhere mentions trafficking inside legal brothels. In fact, their link specifically states that criminals "do not register with the government" which doesn't prove how legalization doesn't work. If anything, it bolsters Plaintiff's argument that people wanting to follow the law, like Dennis Hof, register with the government and that criminals will continue to not follow the law. Again, the State fails to cite how the legalized systems of Nevada; parts of Mexico; parts of South America; the Netherlands; Greece; Australia; Thailand; New Zealand do not work. *100 Countries and Their Prostitution Policies.* ProCon.org. (http://prostitution.procon.org/view.resource.php?resourceID=000772). Out of 100 countries with laws towards prostitution, including the U.S., over 50% of them have some legalized form of prostitution. *Id.* The State has not gone through and discredited the systems; they have not gone through and discredited Plaintiff's witness Dennis Hof, a licensed brothel owner. In a Nevada study, there was zero prostitution arrests in the Nevada counties where prostitution is legal. *Regulation and Harm Reduction in Prostitution,* David H. Rodgers, Florida State University (2010). Instead, the State has tried to mislead the Court of this case by bunching together flawed statistics. This would be intolerable if somebody cited bad law or skewed facts in any other situation. The Court would not allow that. The Court should not allow the State's misleading findings. The only way to know which statistics are true is for both sides to present expert witnesses at trial. Therefore, based on the fact that other sexually oriented businesses are

able to operate with licenses, there is no reason Plaintiff can't obtain a license for a brothel and prevent the secondary effects that illegal prostitution has (trafficking, violence, etc) which Nevada and other legal systems easily prevent. Either the State needs to be serious with themselves and outlaw all sexually oriented businesses to prevent secondary effects or they need to allow legalization to prevent some of the secondary effects.

Also, the State can't honestly argue that prostitution "commodifies" (See *Motion to Dismiss, Page* 14) women and not acknowledge that other sexually oriented businesses do the same thing: "exploit" women. *Strip Club Testimony*. Kelly Holsopple. The Freedom and Justice Center for Prostitution Resources. (2016). (http://www.ayaoutreach.com/uploads/6/1/9/7/61971497/strip_club_study.pdf). (Study finds that strip clubs to be hostile work environments where women are harassed and objectified). Talking to local licensed escorts and strippers, Plaintiff has learned that they have suffered harassment and violence at the hands of customers, but the State keeps these establishments legal because they tolerate it. *Taylorsville Man Allegedly Assaulted Escort Who Refused to Engage in Fetish Games*. Fox 13 News. (2016). (http://fox13now.com/2016/10/22/taylorsville-man-allegedly-assaulted-escort-who-refused-to-engage-in-fetish-games/). Plaintiff believes brothels are more safe because the prostitutes in brothels can be selective of clientele whereas strippers in strip clubs must be naked in front of "all eyes" to make their incomes. To Plaintiff, that is pure commodification. *Inside Bunny Brothel: A Look Behind-the-Doors of Sex Factories Where You Pick from Menus and Can Stay for Up to Four Days*. Mirror. (2016). (http://www.mirror.co.uk/tv/tv-news/inside-bunny-brothel-look-behind-9073466). (Investigative look into the Bunny Ranch brothel and finds that the women are treated fairly and work for themselves). The State has yet to explain why they can allow these businesses and not allow

Plaintiff's brothel. Simply "not wanting to" is not a logical argument. In fact, on page 8 in their Motion, they talk about other businesses, but fail to explain why when those same businesses have shown to have harmful secondary effects.

### B. Moral Legislation is Not a Basis for Outlawing Brothels

Plaintiff has earlier presented guiding and binding case law that moral legislation is not a basis for enacting laws. See: *Lawrence v. Texas* (2003); *Reliable Consultants Inc. v. Earle* (2008); Plaintiff establishes that the brothel laws were enacted based on moral legislation because of a previous 10th Circuit Court ruling regarding brothels: "People engaged in…keeping houses of prostitution, we have found as a result of observation in this world and association with people, are not of that character that can be relied on to that extent that people of high character and good reputation may be relied upon." *Sandquist v. United States,* 115 F.2d 510 (10th Circuit Court 1940). This ruling slanders Plaintiff, as Plaintiff is a returned missionary for the LDS church ("RM") where he baptized at least 30 people in Arizona; he is an Eagle Scout; he has his paralegal degree; he interned with the Attorney General's Office and at the Matheson Courthouse helping domestic violence victims. Plaintiff does not smoke or drink. If anything, his moral character is manifested with him trying to legally pursue establishing a brothel. He has not hid his name or his face. *The Price of Intimacy.* Stephen P. Dark. Salt Lake City Weekly. (2016). (http://www.cityweekly.net/utah/the-price-of-intimacy/Content?oid=3566816) (First published article to talk about Plaintiff's lawsuit). He has faced scoffing and threats for challenging these laws. Many legal prostitutes that Plaintiff knows and many illegal prostitutes are normal people trying to get from Point A to Point B in their lives and need quick money – no different than the

girls who strip or escort. In return for his efforts, the Court should allow Plaintiff to argue his case at trial and let his witnesses testify.

### C. The State Has Promised to Protect Against Fraud, STDs and Violence

The State, as mentioned in Plaintiff's Complaint, has already promised to protect its citizens from fraud, STDs, and violence, as seen on the Attorney General's website. *Priorities, Attorney General of Utah* (Priorities listed on AG's website include "protecting citizens from violent crime....and consumers from fraud"). (http://attorneygeneral.utah.gov/priorities). (See also: *Our Mission, Utah Department of Health).* If not protected by the equal protection clause of the 14th amendment, there is no rational basis to deny protection – in the form of regulation – to brothels, as similar protection is granted to other adult establishments. *Bedford* is the strongest argument for this. The legislature has the power to prevent nuisances, but not at the safety and welfare of those who engage in prostitution. Groups within the United Nations agree with the court in *Bedford.* With the regulation implemented by Nevada and elsewhere, the citizens of this State will have the chance of being protected. And with proper regulation and zoning, no nuisances will be created, as seen with Nevada. The people who engage in prostitution can be our family members; our friends; our neighbors; our co-workers; and while it can be sad when people do things that we disagree with, it is harder when they are hurt because they had no safety for engaging in their conduct. Prostitution is referred to as "the world's oldest profession" for a reason. It won't ever end, but it can be regulated, as Plaintiff has shown in this Opposition Motion. Plaintiff has already showed the Court his business plan and policies which would empower women and help those

33

who wouldn't flourish in brothels. The closest brothel is four hours away. It causes an undue burden to travel there. Along with the travel, the prices are too expensive; the brothels are filled with cigarette smoke; not a variety of selection; etc. The citizens of Utah deserve to have the chance of protection that the State is already offering. And whether that protection is determined under equal protection or rational basis review does not matter.

### D. The State Laws Do Not Achieve Their End Purpose

The question the State Defendants pose to the Court is whether "the legislature could rationally have concluded that the purposes would be achieved." *Allright Colorado, Inc.*, 937 F.2d at 1512. *Defendants' Motion to Dismiss, Page 14.* As shown in Plaintiff's previous arguments, the statutes do not achieve their purpose (to stop prostitution). The sexual oriented businesses of the State create the demand for prostitution which contradicts the purpose of the statute. *Legalizing Prostitution: From Illicit Vice to Lawful Business.* Ronald Weitzer. University Press. (2012). (Peer-reviewed, well-written research study shows that pornography and stripping fuels the demand for prostitution and is thus hypocritical, as Plaintiff is arguing). Plaintiff likens this situation to a free-flowing faucet (sexually oriented businesses that relate to non-prostitution) that flows to a weak wall (anti-brothel laws) which the wall is meant to be a dam to the water. But eventually, the wall breaks because it's so weak; the dam is breached; its purpose is broken. The same with these laws. These laws were meant to prevent prostitution and hold in any prostitution that happened. But sexually oriented businesses have now merged to interloop and interconnect all of it together, making it indistinguishable. The State now has three options: (1) contradict its findings and show that strip clubs and other licensed establishments aren't linked;

(2) do the *Iceland Approach* and outlaw all adult entertainment; or (3) the State can work with Greer to legalize, regulate and save lives. *Exhibit D* shows laws that Greer has drafted to pitch to the legislature once the laws are found unconstitutional and to immediately start working with the State. Also, *Exhibit E* shows the fiscal note for how much the legalization would cost. The State is gambling with the lives of its citizens; with the nearly 100 people who post to the Escort section of Backpage daily and engage in prostitution activities even though they pose under the guise of being legal. The laws of this State fail to stop the free flow of people engaging in it or the unknown numbers of STDs associated with it. Because of the illegality of it, the numbers and the people and the harm are all unaccounted for. Who is to say at this very moment as Plaintiff writes this rebuttal that an escort in Salt Lake is not being victimized; being raped; being coerced; whose screams and wails are not being heard; though she found herself in this situation because Salt Lake legally allows escorts, but the escorts take advantage of that legality and do illegal things. We have already seen this happen in this state last year. How many more of our women must be strangled? Plaintiff affirms under penalty of perjury that many women have told him about being raped and robbed and beaten within this state; within this city while escorting. Any blood or bruises that she (or a male escort) receives are on the hands of the State for their willful stubbornness; their haughty morality; their blindness to the problems that they create. This would not happen with a brothel that was licensed and that worked with the sheriff's office. Plaintiff has the business plan and model to help free-thinking, free adults who wish to engage in this and to help those who don't qualify as a sex worker. Plaintiff begs the Court to allow him to proceed to a trial.

Criminalization does not work, as has been established time and time again. *Human Trafficking and Regulating Prostitution.* Samuel Lee. New York University School of Law.

(2015). (http://lsr.nellco.org/cgi/viewcontent.cgi?article=1303&context=nyu_lewp). (Peer-

reviewed study shows that the best approach to combating the ill effects of prostitution is to have

strict regulations: allowing brothels, but criminalizing everything unlicensed). As *Roe* argued,

the right to privacy is not "absolute" and therefore rights should be given, but regulated. The

rational basis is the best route to do this, as every objection the State has given has been defeated

and the State's statutes have not achieved their goal because people are still engaging in sex

work.

## CONCLUSION

As has been established, the State cites flawed arguments and did not adequately explain

why every sexually oriented business except brothels can be allowed in the State of Utah – those

businesses are plagued with secondary effects, too. They can't explain why the secondary effects

of strip clubs are OK to have, but potential effects of brothels aren't. They ignore that trafficking

and violence can occur in strip clubs and escorting, both legal in Utah, as well. Plaintiff has

rebuffed their citations and studies with a vast amount of his own. The important thing about

Plaintiff's citations is that they are neutral studies. They aren't a part of an agenda like feminism

(the State relies heavily on feministic studies) which is hell-bent on destroying prostitution. The

studies that Plaintiff cites are peer-reviewed and fair. Plaintiff has also listed the expert witnesses

he seeks to call to trial to testify how the laws do not work. The State has failed to explain why

legalization does not work and has instead given vague, blanketed, robotic, sterile case law and

broad statistics which they no doubt found by typing in keywords on Google and WestLaw

without thinking about what they were writing because when their citations and paragraphs are

analyzed, they are incoherent and do not flow. They cite prostitution cases, but fail to cite brothel

laws. The state statutes clearly distinguish the two therefore making an As Applied challenge possible.

More disturbingly, the State has only given conjecture. They have not stepped a foot in a brothel; they have not talked to people who have worked in legal brothels. But Plaintiff has. Plaintiff has a plan to help people. The State does not help the people they arrest. In fact, they only destroy lives with their laws. Running a brothel where consenting adults interact produces no victims, and the activity therein is regulated. The notion that sexual interactions under 10 hours long are not protected is absurd. That's what *Lawrence* was all about – protecting one night stands. Not only were bans on homosexual sodomy rendered unconstitutional; heterosexual bans were rendered invalid as well, as were fornication laws. There is no difference between buying dinner for a partner with the expectation of sex than paying a consenting adult for sex. The State has failed to distinguish the difference between "Tinder hook ups" and "brothel hook ups". The State doesn't prosecute hook up apps yet brothels and prostitution is prosecuted. It is a hypocritical, absurd law.

Plaintiff is in close contact with Dennis Hof, who owns seven brothels and must follow the law to a "T" to keep his licenses. Plaintiff has cited mandatory and persuasive case law – many from sister courts – and has cited well regarded health groups that support Plaintiff's cause. As a point to ponder, prostitution has been seen to occur in the animal kingdom (apes trading bananas for sex; penguins giving pebbles for intercourse; etc) therefore making the want for sex in consideration of something of value a natural thing. *Pick Up a Penguin.* BBC News. (http://news.bbc.co.uk/2/hi/asia-pacific/60302.stm). (1998). Lawrence truly sets up the legalization of brothels, as Justice Kennedy allowed for his ruling to be given to generations to come, as was seen in Obergefell. Keep in mind, though, that privacy is not absolute and must be

37

regulated. But the point is clear: the State laws fail to prevent the conduct. As Bedford says, the legislature has the right to keep out nuisances, but not at the life and safety of those who engage in prostitution. The State does not even attempt to argue why Canada, whose legal system is similar to ours, can overturn their laws, but Utah can't. Greer has clearly shown, though, why the laws do not work.

Greer asks for the Court to WITHOLD issuing a ruling and accept that Plaintiff has stated a claim (several claims stated, in fact) of the State lacking a rational basis, or that it may lack a rational basis, and allow the case to proceed to trial so that Plaintiff may show with expert witnesses how the laws do not work. Simple citations on paper do not achieve that effectiveness. This is the Plaintiff's Opposition and plea.

Russell Greer
Pro Se Litigant
/rgreer/
01/05/17

38

## EXHIBIT A

Brothel Business Registration that Berg and the Utah Business Licensing Approved before being revoked. Because it was approved initially, Greer began working on a sexually oriented license to register at the city.



**SALT LAKE CITY CORPORATION**
451 South State Street, Room 225
Salt Lake City, Utah 84111
(801) 535-6644

License # _____

### SEXUALLY ORIENTED BUSINESS - LICENSE APPLICATION

**Ownership Type** (Check one):

| Corporation | Limited Partnership | Partnership | Sole Proprietorship (Individual) |
|---|---|---|---|
| ☐ | ☐ | ☐ | ☒ |

**Type of Business** (Check one):

| Adult Bookstore / Video Store | Adult Motion Picture Theater | Adult Theater | Nude Dancing Agency | Outcall Agency | Other - Licensed Brothel |
|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

Person signing this application on behalf of applicant business:

Full and correct legal name:  Russell Godfrey Greer

Residence address:  851 Edison St Apt A          Salt Lake City    UT          84111

## EXHIBIT B

Blueprint for the Mile High Neon with clear description of rooms and facilities.



**EXHIBIT C**

Pictures of Plaintiff Tricia Christie and Greer. Also, a picture of a manifestation of Greer's inability to get dates. Tinder shows that Greer was passed up 285 times.



It is Plaintiff's hope that once the laws are found unconstitutional, that Governor Herbert would hold a special legislative session and that the following proposed laws will be incorporated into the Utah Code to protect adults.

## EXHIBIT D

### PROPOSED AMENDED LAWS TO THE UTAH CODE

**76-10-1301 – Definitions**

**Licensed House of Prostitution – A legal establishment that has been licensed by the State and allowed to function.**

**Licensed Sex Worker – A sex worker can be male or female and is licensed to work in a licensed house of prostitution.**

**76-10-1308 – Prosecution – Prosecution for unlicensed prostitution would be felonies**

1. **A. Any prostitution that occurs outside of a licensed house of prostitution is a third degree felony and a sex offense with both parties, prostitute and john, being registered on the sex offender registry.**
   **B. Anyone that places an ad online, through print, or any other means, offering prostitution services outside of an unlicensed house of prostitution, shall be guilty of a third degree felony.**
   **C. Anyone that places an ad offering escort, massage, or dancing services, with the intent to engage in prostitution, shall be guilty of a third degree felony.**
   **D. Anyone that shall have a profile linked to websites known for harboring and running illegal prostitution shall be guilty of a third degree felony.**

2. **A. Anyone that shall attempt to run, operate, own or lease an unlicensed house of prostitution is guilty of a third degree felony.**
   **B. Anyone that attempts to or patronizes or solicits or works inside of an unlicensed house of prostitution is guilty of a third degree felony and shall be put on the sex offender registry.**

**76-10-1311 – Penalties on Licensed House of Prostitution Owners/Workers**

1. **A. Any licensed house of prostitution owner who breaks the conditions of his or her license (see section on granting licenses) shall be guilty of a third degree felony.**
   **B. Any licensed house of prostitution owner who traffics another against his or her will into a licensed house of prostitution shall be guilty of a second degree felony.**
   **C. Any licensed house of prostitution owner who knowingly employs a minor shall be guilty of a second degree felony.**

**D.** Any licensed house of prostitution owner who knowingly employs a licensed sex worker who has a Sexually Transmitted Disease shall be guilty of a third degree felony.

2. **A.** Any licensed sex worker who breaks the conditions of his or her employment license shall be guilty of a third degree felony.
   **B.** Any licensed sex worker who helps traffick another against his or her will into a licensed house of prostitution shall be guilty of a third degree felony.
   **C.** Any licensed sex worker who helps or encourages a minor to work in a licensed house of prostitution shall be guilty of a third degree felony.
   **D.** Any licensed sex worker who knowingly has a sexually transmitted disease and continues to work as a sex worker shall be guilty of a third degree felony.

**76-10-1312 – Assault on a Sex Worker**

1. Given the vulnerable positon that sex workers are in, anyone that shall assault or batter a sex worker shall be guilty of a third degree felony.
2. It does not matter how the sex worker was assaulted or what state of mind the assaulter was in, the assaulter shall be guilty of a third degree felony. There will be a zero tolerance policy for violence on sex workers.

**Added Section to the Utah Code Concerning Legalizing and Regulating Brothels. A brief summary is given for each proposed section (See Utah Code 76-7-3 concerning the regulation of abortion clinics for similar guidance; See also Lyon County Brothel Ordinance on how they regulate and zone brothels):**

1. Granting the powers for a commission to be created to scope a location in Salt Lake County for brothels to be created. The commission shall also be made to work with Greer in the planning process. Two brothels shall be allowed in the county. On opposite sides of the county to provide easy access for interested parties.
2. State law shall make prostitution a state matter and shall determine how many counties besides Salt Lake County can have a brothel.
3. State law shall set out regulations and the background checks for those who wish to work in brothels and those who wish to own and run a brothel. Regulations will include:
   a. An organized and detailed list of keeping track of prostitutes and owners such as finger printing; file keeping of information concerning owners and workers; recent photos of workers and owners; background information; financial and medical disclosures.
   b. A plan on how to STD test the workers weekly and give them shots.
   c. A plan on how to treat workers that do obtain a STDs.

4. Have a watch dog/open door policy to allow those who have evidence of criminal wrong doing taking place to come forward and report it.
5. State law to require mandatory condom use in all sex acts.

**EXHIBIT E**

**Dynamic Fiscal Note shows the benefits the State earns by enacting this bill.**

**SHORT BILL TITLE:** Utah Brothel Legalization
**Bill Sponsor:** R. Greer
Note: Estimates subject to change during actual fiscal noting process.



Note: In 2016, there was an estimated prostitution arrest rate of 400 arrestees.*
The State/Local Communities spent about 1,000,000 dollars on fighting prostitution. **
The State legislature spent very little itself doing anything new than doing the same old.
They didn't see any benefits from enforcing these laws.

In 2017, if the laws were found unconstitutional and Gov. Herbert was thus forced to hold
a special legislative session to legalize brothels, the State would spend anywhere from
spending 500,000.00 to 1,000,000.00 dollars enacting the Brothel Bill sponsored by Greer.
Immediate effects would not be seen until the next fiscal year.

In 2018, the arrests of prostitution would drop three-fourths because everybody would see
how beneficial legal brothels are. Thus, the time and money fighting it would drop as well.
And the tax revenue from the brothel(s) would be about 4 million dollars that would go
back into the state's pocket***.

In the following fiscal years, the harmful effects would decrease and the benefits would
only increase because people would see the benefits. Thus, the Mile High Neon is truly that:
a mile high light that would serve as a light unto the world.

**\*Prostitution statistics from years ago coupled with recent news reports of arrests in Utah.
*US and State Prostitution Arrests, 2001-2010*. ProCon.org.
([http://prostitution.procon.org/view.resource.php?resourceID=000120](http://prostitution.procon.org/view.resource.php?resourceID=000120)).
\*\**The Costs of Keeping Prostitution Illegal.* Moneycation: Money Management and
Information News. (2014). ([http://www.moneycation.com/2014/03/the-cost-of-keeping-prostitution-illegal.html](http://www.moneycation.com/2014/03/the-cost-of-keeping-prostitution-illegal.html)).
\*\*\*Simple math. If brothels become legal, let's suppose that one brothel makes up to
$160,000.00 in one day (10 sex workers would make up that much) and it makes up to this
for one year (365 days in a year). Multiply $160,000.00 by 365 and you get: $58,400,000.00.
Ten percent of that tax is going back to the State. The legalization benefits are tremendous.
But money isn't the essence of the argument: saving lives and protecting people is. The
money only comes along with that protection.**

**CERTIFICATE OF SERVICE:**

I certify that on January 8, 2017, a true and correct copy of PLAINTIFF'S OPPOSITION MOTION AND MEMORANDUM IN SUPPORT was emailed to the following:

    Greg Soderberg, Assistant Attorney General and Counsel to State Defendants Berg, Herbert & Reyes.
        Gmsoderberg@utah.gov

    Neil Sarin, Counsel for County Defendants Gill, McAdams & Yoshinaga
        Nsarin@slco.org

    Catherine Brabson, Counsel for City Defendants Allred and Biskupski
        Catherine.Brabson@slcgov.com