Russell Greer
1450 South West Temple
Apt D206
Salt Lake City, Utah 84115
949-397-7312
russmark@gmail.com
Pro Se Litigant

FILED
U.S. DISTRICT COURT

2017 MAY -5  P 12: 22

DISTRICT OF UTAH

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **RUSSELL G. GREER**.<br><br>Plaintiff,<br><br>v.<br><br>**GARY R. HERBERT**, in his official capacity as Governor of the State of Utah; **SEAN D. REYES**, in his official capacity as Attorney General of the State of Utah; **SIM S. GILL**, in his official capacity as District Attorney of the City and County of Salt Lake; **JACKIE BISKUPSKI**, in her official capacity as Mayor of the City of Salt Lake; **BEN McADAMS**, in his official capacity as Mayor of the County of Salt Lake; **KATHY BERG**, in her official capacity as Director of the Division of Commerce; **JAMES ALLRED**, in his official capacity as Business Licensing Manager for the City of Salt Lake; **ROLEN YOSHINAGA**, in his official capacity as Director of Planning and Development for the County of Salt Lake,<br><br>Defendants | **PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S STANDING AND THE RIPENESS OF THE CLAIMS**<br><br>Case No.: 2:16-cv-01067-DBP<br><br>Magistrate Judge Dustin B. Pead |

Pursuant to *Utah Rules of Civil Procedure 7 b(1)*, Plaintiff Russell Greer respectfully submits this Brief in response to the Court's order on 04/21/2017, directing parties to file briefs.

1

## I. INTRODUCTION

Utah's brothel laws which outlaw brothels are causing chaos and harm to Plaintiff, Plaintiff's commercial sex partners and people similarly situated to Plaintiff and his commercial sex partners. The laws cause Plaintiff and his partners to meet up in secret without telling their loved ones or friends what they are doing, leading them into situations of gang rape, threats of violence and instances of actual violence, robbery and fraudulent inducement. When the situation isn't an "ambush", both partners are panicky and sometimes don't practice proper safe sex because of the very real imminent fear of a police raid. To avoid prosecution, Plaintiff, his partners and those similarly situated, have travelled undue distances and have made economic and financial difficulties to travel to a different State to have legal protection, only to suffer harm from cigarette smoke and the occasional person who misuses legality. Plaintiff has found himself in these situations in which he will expound upon further in this Brief which gives him standing. Furthermore, Plaintiff tried going the legislative route to fix these wrongs and applied for a brothel license, in which he was briefly given approval for a brothel, only to have Defendant Berg revoke his license. The harm Plaintiff has suffered has been "particularized" and "concrete". *Lujan v. Defenders of Wildlife* (1992).

While the Court has noted in the Ruling and Order of 04/21/2017 that Greer, a Pro Se litigant, can't represent other Pro Se litigants, it is settled law that organizations and corporations can represent the harms of its members or those that are associated with the organization, or in this case: those that would have been and want to be associated with the Mile High Neon brothel, if it had been allowed to keep its business registration and license. *Central Telecommunications v. TCI Cablevision* (8th Cir. 1986) (including District Courts in this 10th Circuit) held that "unestablished businesses" can bring suit based on the degree of "affirmative action" the plaintiff

2

had for his business he tried starting. *Id* at 729. With that established, *Warth v. Seldin* (1975) laid out what gives an association standing:

"Whether an association has standing to invoke the court's remedial powers on behalf of its members, depends…on the relief sought. If [an] association seeks a declaration….it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind." *Id*. This is elaborated on in *Hunt v. Washington State Apple Advertising Commission* (1977), with the Supreme Court saying:

"An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

With that said, even though Tricia Christie may be stricken from the Challenge, the business that Greer was briefly granted State legal recognition, can represent her claims and the claims of those similarly situated to Greer and Christie, per federal rulings, as Greer mentions several times the unequal protection of not allowing a business license in his Complaint and Motion, the people he wishes to protect and he talks in his Complaint and Motion about the good his brothel would do. Since he has actually met real people who want to work in the brothel, but are afraid to join the case due to stigma and prosecution, their claims are not hypothetical, but are imminent which imminent threat allows standing. *Summers v. Earth Island Institute* (2009) ("injury-in-fact" can either be particularized and concrete or it can be actual and imminent). Therefore, the business has standing under Article III of the Constitution, along with a host of

3

supporting federal legal precedent, as does Greer himself. Lastly, this case has ripeness to allow to be heard.

## II. ARGUMENT

### A. PLAINTIFF GREER HAS STANDING BASED ON MULTIPLE CLAIMS

**Claim 1: Plaintiff has Standing in Being Denied a License:**

Greer's most obvious and damaging "injury-in-fact" was being granted a business license, only to have it revoked three weeks later by Defendant Kathy Berg. Greer went through the proper procedures of gaining a registration and license during December of 2015. He wanted to try getting a business license to open a brothel after seeing guiding case law that made prostitution socially acceptable. He developed a plan (such as how he could protect workers) and even clearly explained on the paperwork what he was trying to open and explained his case law for why it should be opened. If he was granted one, Greer prepared himself to go to the legislature to try showing what he had been given to try overturning the laws. Greer submitted his application for a business registration and license, and two days later, Greer was given a business registration with a registration number and the proper paper work to file with the county and city. Approximately three weeks later, in early January of 2016, Greer received a Notice from Berg, informing Greer that his business registration had been revoked "effective immediately" for illegal business purposes. Berg cited Utah statute 47-1-1 as the basis for revoking his registration. Thus, this establishes the "casual connection between the injury and conduct complained of", as Greer is complaining that Berg's revocation of the brothel registration caused him harm of not operating a legal business that he had every intention of setting up. He even had plans to receive donations to build the structure and have a well-known business man be the proprietor of the brothel. Berg cited Utah code which Herbert is in charge of

4

overseeing and therefore he acted in color of authority by making sure all of the departments beneath him acted according to the law. Greer has suffered anguish knowing that he can help people, but with all efforts thwarted, he can't do anything; knowing that there are girls who want protection, but are not being afforded it.

It has been established in this District and in this Circuit, that merely being denied a license establishes standing to challenge laws and regulations. *Kitchen v. Herbert* (D. Utah 2013). (Derek Kitchen and his partner applied for a gay marriage license, when they knew that the court clerk didn't offer gay marriage licenses, but they still had standing to challenge the Utah Constitution). Several Supreme Court cases have found that Plaintiffs lacked standing to challenge laws because they *didn't apply for a license or* application: FW*/PBS, Inc. v. Dallas* (1990) ruled that Plaintiffs didn't have standing to challenge a licensing statute, which was for a sexually oriented business as well, because the Plaintiffs never applied for a license; *Obergefell v. Hodges* (2015) ruled that denying Plaintiffs' marriage license was demeaning to their "personhood" and "intimate choices"; *Schware v. Board of Bar Examiners of New Mexico* (1957) held that denying a license based on "moral character" was a violation of the 14th amendment Due Process Clause. *Schware* is interestingly persuasive because it involves conduct that was considered taboo which is similar in argument to the conduct that the State deems illegal and immoral in this present case. Being denied a license is a well-established "concrete" injury, as has been shown. With this long line of federal precedent, it is "likely" that Judge Pead will redress the current challenge favorably to Plaintiff because he has laid out thorough arguments and has strong case law that allows him to overturn the laws and get a license.

**Claim 2: Greer has Standing, as he has Engaged in Illegal Conduct and His Further Illegal Conduct is Imminent; Catching the AIDS virus is Imminent Harm:**

5

Greer's second concrete "injury-of-fact" is both actual and imminent. The actual concrete harms are listed as follows: Since 2013, Greer has paid prostitutes in the City and County of Salt Lake. His first act of prostitution occurred in 2013 at his college dorm. Greer paid a prostitute -- which most prostitutes go by the term "escorts" because it is a classier connotation and to avoid prosecution, thus making the term interchangeable with licensed escorts who aren't supposed to engage in sexual intercourse per state law and which bolsters Plaintiff's claims of hypocrisy and equal protection -- 300 dollars to give Greer a hand job which is illegal. When the brothels got too expensive and the travel became unbearable to Nevada, Greer regularly paid prostitutes in Salt Lake City and County, from 2013-2016. For those three years, Greer had many hit and misses. Some encounters were complete flukes. One such instance was when Greer paid a girl for three hours. The first hour was meant to be a dinner date. The last two hours were a planned sexual encounter. During dinner, the girl received a phone call, excused herself and never returned, defrauding Greer. Another time, Greer entered an apartment and was held under duress with a threat of violence to give him the money he had on him and to leave. Other times, Greer has met the girl as advertised, but both Greer and her are so scared of arrest, that they rush through any "proper vetting" or "inspections" for STDs, have sex and dispose of condoms by flushing them down the toilet. There is no verification that the girl is clean, unlike licensed sex workers (like in Nevada) who are tested weekly. Greer is robbed of the legality and comfort that non-commercial sex partners have where they can vet their partners and not have fear of police rushing into their bedroom. *Lawrence v. Texas* (2003) said that there is an arising awareness pertaining to sexual relations which thus invalidated fornication and sodomy laws. Courts have held that catching an STD or the imminent threat of catching an STD gives one standing to bring suit. *Martin v. Ziherl* (Va. 2005) (Held that intentionally giving an unmarried partner herpes

gives somebody standing). Therefore, Greer has standing because he faces the imminent threat of catching the AIDS virus. See Nevada law which gives one standing to sue a brothel owner if he or she knowingly employs a sex worker who has AIDS. *NAC 441A.800.*

In addition, Defendant Sim Gill has made a threat of prosecution against Greer. In December 2016, when reporter Stephen Dark was interviewing Greer for an article he was writing about the current lawsuit, Dark asked Gill what he thought of the case. Gill stated, "As long as it is illegal, Mr. Greer is expected to follow the law just like everybody else." Greer took this as a threat. This was proved to be true because when Greer contacted the police to report harassment against him, the officer stated that he knew who Greer was which establishes that Gill had police investigating Greer and to keep tabs on him in light of this lawsuit. Reyes could very well prosecute Greer too. Greer has not had sex with a prostitute recently because when Judge Pead overturns the laws, Greer does not want any criminal activity to prohibit him from having a license i.e. a "civil disability". But Greer has recently been looking at escort ads. He is often tempted to pay a prostitute. He misses sex. He misses intimacy. Prostitution is a lifestyle for Greer and other disabled people– it is the only way he can date. This isn't a hypothetical harm either because Greer does plan on paying illegally for a prostitute should he lose this case, which now that Gill and Reyes know about Greer's intention, Greer could easily be charged with an "inchoate" crime. It was recently established in this circuit with *Brown v. Buhman* (10th Cir. 2016) that when a prosecutor signs a declaration that he or she will not prosecute a crime, the plaintiff loses standing, as was seen with the Browns. That is not the case with Greer, as Gill made a veiled threat at Greer to prosecute him if he continued in illegal conduct. (*Lujan v. Defenders of Wildlife* (1992) established that repeated conduct and intent to repeat past conduct is more than enough to give one standing.) If there were a legal brothel in Utah, Greer wouldn't

7

be breaking the law. As an example, homosexuals were still having sex while sodomy was illegal. It was their lifestyle, it was later ruled in *Lawrence*. It's the same here. The State is controlling Greer's destiny to have sex.

### Claim 3: Greer has Standing due to Economic Harm:

Greer's third "injury-in-fact" is he has standing due to the laborious travel he has to go to flee the state to somewhere legal. He faces the risk that long travel brings with it and is not afforded the same protection in consumption of services as other consumers in the adult entertainment industry like patrons of strip clubs. Greer also has standing because of the injury of going to the smoke-filled brothels in Nevada. Further, Greer risks being terminated from his job if he engages in illegal conduct. His firm knows about this challenge and has sat down and talked to Greer and has warned Greer that if he does anything illegal or if he causes the firm to lose a client due to him challenging these laws, he will be fired. This threat is actual and imminent. Greer goes to work wondering if he will be fired due to him challenging these laws. If it were legal, Greer wouldn't need to worry about being fired. It is settled law that economic harms satisfy the injury-in-fact requirements. *FCC v. Sanders Brothers Radio Station* (1940) (likelihood of "financial injury" gives one standing).

### Claim 4: Greer has Standing, as his Business Can't Protect those Seeking Protection:

Greer, as established in the introduction of this Brief, has standing to challenge these laws as an unestablished business owner with an association that wants to protect those who have interests in his brothel, but can't because Berg revoked his license and Herbert oversees that it remains criminalized. "It is as unlawful to prevent a person from engaging in business, as it is to drive him out of business." *Thomsen v. Union Castle Mail* (2nd Cir. 1908). As per the cited law in the introduction, Greer's unestablished business can represent the interests of the very real

people who want to be a part of the brothel. Greer has met many who are harmed because they don't have a legal place. None of them are willing to come forward due to stigma and threat of prosecution. A few of them are:

1. Layla. A University of Utah student who has been a prostitute for two years now. An arrest would ruin her academics and she risks a possible expulsion.
2. Tricia Christie: a single mother who does prostitution because of the money. If arrested, she could lose custody of her child.

These women have interests in this case. Since the Mile High Neon is an association, it can represent the women. Plaintiff is also aware of several handicapped men who are more "limited" than Greer who seek to have a legal brothel. This shows that both customers and workers have an interest in this case. All can be called upon to testify at the trial, if needs be.

### B. GREER'S CLAIMS ARE RIPE TO BE HEARD

Along with having standing, Greer's claims are ripe to be heard. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States* (1998). The opposite is true with Greer's case. He has suffered actual harm from events that have already occurred, as has been specified. Even in the claims where threat of prosecution is imminent, the events have occurred to make them ripe based on Gill's statement to Dark and based on the fact that that the State and County regularly conduct police stings. Greer has already tried going the legislative route and other routes to bring relief for himself and for others, but was denied relief which resulted in this constitutional challenge. Thus, there would be an immense hardship on Greer and his business and the interests of the people that his business represents if judicial consideration was withheld. If judicial

consideration is withheld, Greer will continue to solicit prostitutes in the City of Salt Lake because it truly is a lifestyle as a disabled person. He has no easy way to get to Nevada, and Nevada is very expensive and the brothels reek of smoke and the travel causes an undue burden. Federal law has supported this argument of undue burdens for distances to abortion clinics and the hardship of getting married out of state in relation to gay marriage. Greer's chances of catching AIDS will increase due to illegality whereas legalization would lower those risks due to proper vetting and testing; Greer's rights guaranteed by the constitution to have sex with another adult, upheld by a long line of federal case law, will be diminished. His status as a member of a protected class – the disabled community – will be "dragged through the mud" and be "spit upon", so to speak, if no judicial relief is granted or no favorable ruling issued. He had no control of being born the way he was. In challenging these laws, he only seeks to have protection and comfort for himself, other disabled persons, persons who aren't disabled and the men and women who choose to be paid sexual partners to Greer and other individuals. The resistance from the State and County is damning and discriminatory to the disabled. Even though their laws are neutral on its face, they have a discriminatory effect against the disabled. See Phyllis Segal, *Sexual Equality, the Equal Protection Clause, and the ERA*. Buff. L. Rev. (1984).

    Greer respectfully submits and declares all to be true under penalty of perjury.

    /rgreer/

**05/05/2017**

## **CERTIFICATE OF SERVICE:**

I certify that on May 05, 2017, a true and correct copy of PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S STANDING AND THE RIPENESS OF THE CLAIMS was emailed to the following:

Greg Soderberg, Assistant Attorney General and Counsel to State Defendants Berg, Herbert & Reyes.
Gmsoderberg@utah.gov

Neil Sarin, Counsel for County Defendants Gill, McAdams & Yoshinaga
Nsarin@slco.org

Catherine Brabson, Counsel for City Defendants Allred and Biskupski
Catherine.Brabson@slcgov.com