DAVID N. WOLF (6688)
GREG SODERBERG (14016)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@agutah.gov
E-mail: gsoderberg@agutah.gov

*Counsel for State Defendants*

---

### IN THE UNITED STATES DISTRICT COURT

### IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER,<br><br>               Plaintiff,<br><br>v.<br><br>GARY R. HERBERT, in his official capacity as Governor of the State of Utah; SEAN D. REYES, in his official capacity as Attorney General of the State of Utah; SIM S. GILL, in his official capacity as District Attorney of the City and County of Salt Lake; JACKIE BISKUPSKI, in her official capacity as Mayor of the City of Salt Lake; BEN McADAMS, in his official capacity as Mayor of the County of Salt Lake; KATHY BERG, in her official capacity as Director of the Division of Commerce; JAMES ALLRED, in his official capacity as Business Licensing Manager for the City of Salt Lake; ROLEN YOSHINAGA, in his official capacity as Director of Planning and Development for the County of Salt Lake,<br><br>               Defendants. | **STATE DEFENDANTS' MOTION TO DISMISS SUPPLEMENTAL COMPLAINT**<br><br><br><br>Case No. 2:16-cv-01067-DBP<br><br>Magistrate Judge Dustin B. Pead |

# TABLE OF CONTENTS

MOTION..................................................................................................................... vii

INTRODUCTION ...................................................................................................... viii

LEGAL STANDARD................................................................................................... ix

ARGUMENT ................................................................................................................. 1

   1.   Plaintiff Has Standing Except as To Claims Asserted on Behalf of Others....................... 2

   2.   Plaintiff's Controversy is Ripe for Judicial Review........................................... 5

   3.   Plaintiff's Constitutional Claims Are Analyzed Under Facial Standards ........................... 6

   4.   Plaintiff's Substantive Due Process Claims Fail. .......................................... 11

      A.  THE RELATIONSHIP BETWEEN PROSTITUTE AND CLIENT IS NOT PROTECTED BY THE DUE PROCESS CLAUSE. ................................. 11

      B.  UTAH'S LAWS CRIMINALIZING PROSTITUTION ARE RATIONALLY RELATED TO LEGITIMATE GOVERNMENT INTERESTS................................. 13

   5.   Plaintiff's Equal Protection Claim Fails Because the Acts Are Neutral and There Is No Discriminatory Purpose Toward People with Disabilities. ................................. 16

   6.   Plaintiff's Due Process Claim to a Right to Earn a Living as Sole Proprietor of a Brothel Fails Because Prostitution Is Illegal. ................................. 18

   7.   There Is No Associational Right Between Prostitute and Client. ................................. 19

   8.   Plaintiff's Claims Under the Utah Constitution Should Be Dismissed............................ 19

   9.   Utah's Prostitution Statutes Are Not Unconstitutionally Vague..................................... 21

CONCLUSION............................................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697 (10th Cir. 2014) ........................... 1

*Allright Colorado, Inc. v. City & Cty. of Denver*, 937 F.2d 1502 (10th Cir. 1991) ............... 14, 16

*Am. Bush v. City of S. Salt Lake*, 2006 UT 40, 140 P.3d 1235 ............................................... 20, 21

*Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986) ........................................................... vii, ix, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... ix

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ................................................ 18

*Bishop v. Wood*, 426 U.S. 341 (1976) ....................................................................................... 18

*Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995) ..................................................... 18

*Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016) .................................................................... 2

*Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231 (10th Cir. 2013) ........................ ix

*Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016 (10th Cir. 2014) ............. 5

*City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004) ...................................... 19

*Colorado Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394 (10th Cir. 1992) ............................... 5

*Conn v. Gabbert*, 526 U.S. 286 (1992) .................................................................................... 18

*Coyote Publ'g, Inc. v. Miller*, 598 F.3d 592 (2010) ............................................................ 14, 15

*Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. 2012) ....................................................... 8

*Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, No. C 15-01007 JSW, 2016 WL 1258638 (N.D. Cal. Mar. 31, 2016) ................................................................................... 12

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993) ................................................................ 11

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) ............................................................... 19

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ................................................................ 21, 22

*Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276 (10th Cir. 2004) ................................. 14

*Heller v. Doe by Doe*, 509 U.S. 312 (1993) ................................................................................. 14

*IDK, Inc. v. County of Clark*, 836 F.2d 1185 (9th Cir. 1988) .......................................... ix, 13, 19

*Johnson v. United States*, 135 S.Ct. 2551 (2015) ......................................................................... 21

*Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014) ................................................................... 2, 3

*Lawrence v. Texas*, 539 U.S. 558 (2003) ................................................................ vii, ix, 11, 12, 13

*Love v. Superior Court*, 226 Cal. App. 3d 736 (1990) ................................................................ 15

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................................................ 2

*Miller v. Glanz*, 948 F.2d 1562 (10th Cir. 1991) .......................................................................... 1

*Muth v. Frank*, 412 F.3d 808 (7th Cir. 2005) ............................................................................... 12

*New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495 (10th Cir. 1995) ...................... 5, 6

*Northern Mariana Islands v. Taman*, 2014 WL 4050021 (N. Mar. I. 2014) .............................. 15

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ................................... ix, 19, 20

*People v. Grant*, 195 Cal. App. 4th 107 (2011) ...................................................................... 15, 16

*Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256 (1979) ............................................. 16, 17

*Petrella v. Brownback*, 787 F.3d 1242 (10th Cir. 2015) .............................................................. 11

*Powers v. Harris*, 379 F.3d 1208 (10th Cir. 2004) ...................................................................... 13

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ....................................................................... 11, 13

*Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221 (10th Cir. 1997) .............. 20

*Seegmiller v. LaVerkin City*, 528 F.3d 762 (10th Cir. 2008) ................................... 11, 12, 14, 17

*Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190 (10th Cir. 2013) ........................................ ix

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ............................................................... 2

*State v. Hernandez*, 2011 UT 70, 268 P.3d 822 ............................................................ 20

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................................... 3, 4

*Summit Water Distribution Co. v. Summit Cty.*, 2005 UT 73, 123 P.3d 437 ................................ 21

*Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226 (10th Cir. 1999) ..................................... 1

*Teigen v. Renfrow*, 511 F.3d 1072 (10th Cir. 2007) ....................................................... 11, 14

*United States v. Carter*, 266 F.3d 1089 (9th Cir. 2001) ..................................................... 14

*United States v. Pruitt*, 502 F.3d 1154 (10th Cir. 2007) .................................................... 10

*United States v. Supreme Court of New Mexico*, 839 F.3d 888 (10th Cir. 2016) .............. 6, 7, 8, 9

*United States v. Welch*, 327 F.3d 1081 (10th Cir. 2003) .................................................. 21

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ...................................................... 11, 12

*West v. Thomson Newspapers*, 872 P.2d 999 (Utah 1994) ............................................... 20

*Williamson v. Lee Optical of*, Okla., 348 U.S. 483 (1955) .............................................. 18

**Statutes**

Article 12 section 20 of the Utah Constitution ................................................................ 21

Utah Code Ann. § 16-10a-126 ........................................................................................ 5

Utah Code Ann. § 42-2-5 ................................................................................................ 6

Utah Code Ann. § 76-10-1304(1)(iii) ........................................................................... 22

Utah Code Ann. §§ 76-10-1302–76-10-1305 ......................................................... vii, viii, ix

**Rules**

Fed. R. Evid. 201 .......................................................................................................... 14

Federal Rule of Civil Procedure 12(b)(6) ............................................................... vii, viii, 1

**Other Authorities**

*Commercial Sex: Beyond Decriminalization*, 73 S. Cal. L. Rev. 523 ......................................... 15

*Prostitution Trafficking, and Cultural Amnesia: What We Must Not Know in Order to Keep the Business of Sexual Exploitation Running Smoothly*, 18 Yale J.L. & Feminism 109 .............. 14, 15

# MOTION

Defendants Governor Gary R. Herbert, Attorney General Sean D. Reyes, and Kathy Berg, Division Director of the Division of Corporations and Commercial Code ("State Defendants"), through counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and District of Utah Local Rule 7-1, submit this Motion to Dismiss and Supporting Memorandum. Plaintiff's Supplemental Complaint should be dismissed primarily because the Due Process Clause has never been found to protect the relationship between a prostitute and a client.

Plaintiff challenges Utah laws that make prostitution and brothels illegal. Supp. Compl. ¶¶ 1–2 doc. 55; Utah Code Ann. §§ 76-10-1302–76-10-1305 (criminalizing prostitution and solicitation); *id.* § 47-1-1 (declaring brothels nuisances). Plaintiff argues, *inter alia*, that private consensual sexual activity between adults is a protected liberty interest. Supp. Compl. ¶¶ 1–3 doc. 55.

The Court should dismiss Plaintiff's claims because 1) the liberty interests protected under the Due Process Clause do not include the relationship between prostitute and solicitor; 2) the laws in question are neutral and do not discriminate against persons with disabilities; 3) there is no substantive due process right to earn a living as a prostitute; and 4) the First Amendment's freedom of association does not protect the relationships at stake in the context of prostitution. Similarly, the relationship or conduct at issue is not protected by analogous provisions of the Utah Constitution, and the challenged statutes are not unconstitutionally vague.

The State Defendants ask the Court to find that the statutes are constitutional and dismiss Plaintiff's Supplemental Complaint.

# MEMORANDUM

## INTRODUCTION

Pursuant to the Court's Ruling & Order dated August 30, 2017 (doc. 53), the State

Defendants submit this Motion to Dismiss Plaintiff's Supplemental Complaint. Per the Court's

Order, the State Defendants' revised Motion comprehensively addresses jurisdictional

arguments, claim based arguments, and supplements to the Complaint.

Prostitution and the solicitation of prostitutes are crimes in Utah, punishable as

misdemeanors, or in some cases as felonies. *See* Utah Code Ann. §§ 76-10-1302–1305

(criminalizing prostitution and solicitation), § 47-1-1 (declaring brothels nuisances). Plaintiff

asks this Court to strike down Utah laws that criminalize prostitution and brothels (the "Acts"),

claiming that the Acts, as applied to Plaintiff, violate his Fourteenth Amendment right to

substantive due process, his Fourteenth Amendment right to equal protection, his First

Amendment right to freedom of association, and analogous provisions of the Utah Constitution.

Supp. Compl. pp. 23–36 doc. 55.

The Court should dismiss Plaintiff's Supplemental Complaint as a matter of law. The

standard for review of the Acts is rational basis, not heightened or strict scrutiny, because the

Due Process Clause does not protect the relationship between a prostitute and a solicitor. *See*

*Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (distinguishing its holding from application in the

context of prostitution)[1]. Neither is there a fundamental right to engage in prostitution or to

solicit prostitution. Prostitution and solicitation are not expressive conduct protected by the First

---

[1] Importantly, in *Lawrence*, the Court applied rational basis review, because no fundamental right was implicated 539 U.S. at 579. The Court concluded that Texas's stated government interest of "promotion of morality" was not legitimate. *Id.* at 582–83.

Amendment. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 704–05, 707 (1986). And the

relationship between prostitute and client is not an expressive association protected by the First

Amendment. *See IDK, Inc. v. County of Clark*, 836 F.2d 1185, 1195–96 (9th Cir. 1988). Courts

have uniformly concluded that there is no substantive due process right to work as a prostitute.[2]

*See e.g.*, *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972).

Plaintiff's analogous claims under the Utah Constitution also fail. These claims are

barred by the Eleventh Amendment, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89

(1984), and are foreclosed by multiple state court decisions holding that the Utah Constitution

provides less protection to the relationship and conduct at issue here than the United States

Constitution.

## LEGAL STANDARD

To survive a motion to dismiss, Plaintiff's Complaint "must plead facts sufficient to state

a claim to relief that is plausible on its face." *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d

1190, 1196 (10th Cir. 2013) (internal punctuation omitted) (citing *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

The court must "accept all the well-pleaded allegations of the complaint as true and must

---

[2] Plaintiff's Claim 2(B) states a claim of "Denial of Equal Protection for Those Who Choose to Work in Prostitution." Supp. Compl. p. 30 doc. 55. This claim relates to "allow[ing] women the right to work in brothels," as well as Mr. Greer's alleged right to be the proprietor of a brothel. *Id.* p. 32. Since co-Plaintiff Tricia Christie withdrew from this lawsuit, the Court should dismiss Plaintiff's claim related to an alleged right to work as a prostitute. As set forth below, Plaintiff lacks standing to assert this claim on behalf of others.

construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

## ARGUMENT

Pursuant to the Court's August 30, 2017 Order, the State Defendants here include arguments previously made regarding standing, ripeness, and whether Plaintiff's claims are facial or as-applied. Order p. 13 doc. 53. The State Defendants agree that Plaintiff has standing (in relation to the State Defendants), except to assert his claim 2(B) for the right to work as a prostitute. The State Defendants also agree that Plaintiff's claims are ripe in relation to the State Defendants, because his business registration was denied and Plaintiff has engaged in illegal conduct. Additionally, Plaintiff's claims raise facial challenges to Utah's laws.

Plaintiff's arguments fail as a matter of law because 1) the prostitute-client relationship is not protected by the Due Process Clause; 2) the Acts are rationally related to legitimate government interests; 3) the Acts are neutral and do not discriminate against people with disabilities; 4) Mr. Greer does not have a constitutional right to work as a brothel proprietor and does not have standing to assert claims on behalf of prostitutes alleging they have a right to work as prostitutes; 5) there is no associational right between prostitute and client; 6) the Utah Constitution does not protect Plaintiff's asserted rights; and 7) the Acts are not unconstitutionally vague.

1

**1. Plaintiff Has Standing Except as To Claims Asserted on Behalf of Others.**

Standing consists of three elements: (1) the plaintiff must have suffered an injury in fact;

(2) fairly traceable to the challenged conduct of the defendant; and (3) likely to be redressed by a

favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised*

(May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff,

as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* At

the pleading stage, the plaintiff "must clearly . . . allege facts demonstrating each element." *Id.*

(citation and quotation marks omitted). "An allegation of future injury may suffice if the

threatened injury is certainly impending, or there is a substantial risk that the harm will occur."

*Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 828 (2017).

Regarding licenses or business registrations, the Tenth Circuit concluded, in the context

of marriage licenses, that plaintiffs possessed standing after being denied licenses because, in

part, the plaintiffs "identified several harms that flow[ed] from th[at] denial . . . ." *Kitchen v.

Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014).

Regarding pre-enforcement challenges, "[w]hen a plaintiff alleges injury arising from the

potential future enforcement of a criminal statute, an actual arrest, prosecution, or other

enforcement action is not a prerequisite to challenging the law." *Brown*, 822 F.3d at 1165

(citation and quotation marks omitted). "Instead, a plaintiff satisfies the injury-in-fact

requirement where he alleges an intention to engage in a course of conduct arguably affected

with a constitutional interest, but proscribed by a statute, and there exists a credible threat of

prosecution thereunder." *Kitchen,* 755 F.3d at 1201. (citation and quotation marks omitted).

When a plaintiff sues public officials, a plaintiff can satisfy the causation and redressability requirements of standing by demonstrating "a meaningful nexus" between the defendant and the asserted injury." *Id.* (citation omitted). Causation requires the defendants "to possess statutory authority to enforce the complained-of provision, and the redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute." *Id.* (citations omitted).

Regarding associational standing, a plaintiff must "make specific allegations establishing that at least one identified member ha[s] suffered of would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009).

### Plaintiff Has Alleged an Injury in Fact

Here, Plaintiff has alleged an injury in fact because he was denied a business registration by the Division of Corporations and Commercial Code, and because he has engaged in a course of conduct arguably affected with a constitutional interest, but proscribed by statutes, and there exists a credible threat of prosecution.[3] Plaintiff attempted to take the first step in registering, licensing, and starting a business as a sole proprietor by filing for a business registration with the Division of Corporations and Commercial Code. Plaintiff has also stated repeatedly that he has paid for sex in Salt Lake City in the past, and he fears being prosecuted for doing so in the future. *See, e.g.*, Supp. Compl. ¶¶ 57–58 doc. 55. Being denied a business registration and fearing prosecution are sufficient to demonstrate that Plaintiff has suffered an injury in fact.

---

[3] Arguments made herein apply only to the State Defendants. Mr. Greer likely lacks standing for his claims against County and City Defendants, because he has not been injured by them, and his alleged injuries are not traceable or redressable by them.

*Plaintiff's Alleged Injury is Traceable to and Redressable by the State Defendants*

Plaintiff has sued Governor Herbert, Attorney General Reyes, and Kathy Berg, among other Salt Lake City and Salt Lake County officials. Supp. Compl. ¶¶ 9–16 doc. 55. Plaintiff argues he has been harmed by the State's denial of a business registration to open a brothel, *id.* ¶ 55, and argues that he fears prosecution by State or County attorneys for violating Utah's prostitution and brothel laws, *id.* ¶ 58. Because Governor Herbert and Attorney General Reyes are responsible for promulgating and enforcing Utah law, and because Ms. Berg administers Utah law related to obtaining business registrations, Mr. Greer's alleged injuries are properly traceable to and redressable by the State Defendants. Accordingly, the State Defendants agree that Plaintiff Russell Greer has standing to sue the State Defendants for his alleged injuries and claims based on Utah's prostitution and brothel laws, except for Plaintiff's claim regarding the right to work as a prostitute.

*Plaintiff Lacks Standing to Assert a Claim on Behalf of Future Brothel Workers*

Plaintiff lacks associational standing to assert claim 2(B) regarding a right to work as a prostitute because he has failed to make specific allegations establishing that at least one identified member has suffered or would suffer harm. *Summers*, 555 U.S. at 498. Neither is Plaintiff stating the claim as an association. At most, Plaintiff is seeking to state the claim as a future business owner on behalf of his future employees. Such an attenuated relationship is not sufficient to support associational standing or to assert a claim on behalf of Plaintiff's alleged future workers.[4]

---

[4] "An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested

## 2. Plaintiff's Controversy is Ripe for Judicial Review

For a claim to be justiciable under Article III, it must be shown to be a ripe controversy, meaning that "the issue arises in a specific dispute having real-world consequences." *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014) (citation omitted). "The ripeness doctrine aims to prevent courts from entangling themselves in abstract disagreements by avoiding premature adjudication." *Id.* (citation omitted).

Two factors determine ripeness: the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (citation omitted). "In determining whether an issue is fit for judicial review, the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (citation and quotation marks omitted). In other words, courts focus on whether a challenged government action is final, whether a determination turns upon strictly legal issues, or whether further facts must be developed. *Id.* The second factor is assessed by determining whether the challenged action creates a direct and immediate dilemma for the parties. *Id.*

First, Plaintiff's claims are ripe because the government action here is final and the determination of Plaintiff's claims turns on legal issues.[5] Plaintiff's request for a business registration was denied by the Division of Corporations and Commercial Code. That denial is final and not appealable or reviewable. The requirements of Utah Code Ann. § 16-10a-126,

---

requires the participation of the individual members in the lawsuit." *Colorado Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1397–98 (10th Cir. 1992) (citation omitted).

[5] Arguments made herein apply only to the State Defendants. Mr. Greer's claims against the City and County Defendants are likely not ripe, because Mr. Greer never sought a license for his business from the City or County.

allowing an appeal to the district court if the Division of Corporations and Commercial Code denies a filing related to the formation or amendment of corporations, does not apply here because Plaintiff's filing was for a DBA business registration under Utah Code Ann. § 42-2-5.

Additionally, Plaintiff's claims turn on legal issues and do not require that facts be developed. Mr. Greer is not required to begin operating a brothel before challenging Utah's laws. Mr. Greer attempted to take the first step in the process, but was prevented from doing so. And Mr. Greer has specifically set forth his business plan for operating a brothel in Salt Lake City. Suppl. Compl. at 19–23 doc. 55. Accordingly, Plaintiff's claims turn on legal issues.

Finally, the denial of a business registration creates a direct and immediate dilemma for Mr. Greer. He has demonstrated his intent to start a brothel in Salt Lake City, and alleges that he would like to do so immediately. *Id.* He alleges that the denial of a business registration directly and immediately halted his intentions to start a brothel. Accordingly, the State Defendants agree that Mr. Greer's claims are ripe for adjudication.

### 3. Plaintiff's Constitutional Claims Are Analyzed Under Facial Standards

In determining whether a constitutional challenge is facial or as-applied, the Tenth Circuit asks parties to consider "three key lessons . . . ." *United States v. Supreme Court of New Mexico,* 839 F.3d 888, 914 (10th Cir. 2016) (*petition for cert. filed June 6, 2017*). First, "the labels the parties attach to claims are not determinative . . . ." *Id.* Second, in determining whether to apply facial standards to the claim, "the court must focus on whether the claim and the relief therein extend beyond the plaintiffs' particular circumstances . . . ." *Id.* Third, "if the claim and relief do so, facial standards are applied but only to the universe of applications contemplated by

plaintiffs' claim, not to all conceivable applications contemplated by the challenged provisions."
*Id.*

These lessons were applied in *Supreme Court of New Mexico*, where the Tenth Circuit affirmed a district court decision that a rule prohibiting a federal prosecutor from subpoenaing a lawyer to present evidence about a past or present client in a grand-jury or other criminal proceeding violated the Supremacy Clause. *Id.* at 893. The district court concluded the rule was preempted with respect to federal prosecutors practicing before grand juries, but was not preempted outside of the grand jury context. *Id.*

In analyzing whether the United States' challenge was facial or as-applied, the Tenth Circuit concluded that the challenge had characteristics of both facial and as-applied challenges. *Id.* at 908. The challenge was facial in nature "because it attack[ed] [the rule's provisions] on purely legal grounds . . . and contend[ed] that they [were] per se invalid. In this regard, the claim d[id] not relate to the circumstances of any particular attorney subpoena or any particular trial or grand-jury investigation." *Id.* But the challenge also had "characteristics of an as-applied challenge because it focuse[d] solely on the constitutional ramifications of [the rule's provisions] as they appl[ied] to a specific, narrowly defined group—federal prosecutors licensed in New Mexico . . . ." *Id.* Regarding the relief requested, the Tenth Circuit concluded that Plaintiff did not seek a determination that the rule [was] invalid as applied to any other category of prosecutors, and thus not all applications of the challenged provisions [were] encompassed by the claim." *Id.*

Instead, the Tenth Circuit held that that "facial standards should be applied to the United States's preemption claim but only to the extent that the challenged provisions of [the rule]

impact federal prosecutors licensed in New Mexico and their attorney-subpoena practices." *Id.* at 916. The court's rationale was based, in part, on the observation that "the United States's claim and its desired relief clearly extend beyond the particular circumstances of any particular federal prosecutor issuing an attorney subpoena." *Id.* Accordingly, the court applied typical facial challenge analysis, that "is best understood as 'a challenge to the terms of the statute, not hypothetical applications' and is resolved 'simply by applying the relevant constitutional test to the challenged statute without attempting to conjure up whether or not there is a hypothetical situation in which application of the statute might be valid.'" *Id.* at 917 (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127, 24 (10th Cir. 2012)).

Turning to the present case, Plaintiff's challenges have characteristics of both as-applied and facial challenges. Plaintiff's claims consistently refer to the Statutes as "the as applied brothel laws of Utah" but also reference the laws' impact on "many persons in Utah." *See* e.g., Supp. Compl. p. 32 ¶ 111 doc. 55. In the Prayer for Relief, the Supplemental Complaint asks the Court to declare that the "[a]s [a]pplied brothel laws of Utah . . . are unconstitutional" and asks for injunctive relief so that Plaintiff may obtain a business registration to operate a brothel in the State of Utah. *Id.* at 33 ¶ 114. Plaintiff's complaint also characterizes each of his claims as as-applied challenges. *E.g.*, *id.* at ¶¶ 90, 96, 98, 103, 105. Because the claims have characteristics of both as-applied and facial challenges, the Court should apply the Tenth Circuit's three-part analysis to each of the Plaintiff's claims to determine the appropriate standard.

*Plaintiff's First Substantive Due Process Claim is Analyzed Under a Facial Standard*

Plaintiff's substantive due process claim asserts an as-applied challenge aimed at subparts of Utah's prohibition against places of prostitution. Supp. Compl. pp. 23–27 doc. 55. However,

an order from this Court that the law violates Plaintiff's substantive due process right to private sexual conduct would extend far beyond Plaintiff and affect the application of the law to everyone in Utah. Under *Supreme Court of New Mexico,* this implicates a facial challenge. 839 F.3d at 914. Accordingly, the Court need only analyze "the universe of applications contemplated by plaintiffs' claim." *Id.* Following *Supreme Court of New Mexico,* this Court should thus apply the "relevant constitutional test," which is rational basis review. *Id.* at 917.

*Plaintiff's Equal Protection Claims are Analyzed Under a Facial Standard*

Plaintiff alleges Utah's prostitution laws violate the Equal Protection Clause because they have a disparate impact on physically disabled individuals such as himself. Suppl. Compl. pp. 27–30 doc. 55. Plaintiff does not allege that his business license was denied because of physical disability. *Id.* Rather that Utah's laws disparately impact disabled individuals. *Id.* Accordingly, his challenge possesses aspects of facial and as-applied challenges, and therefore facial standards are applied "only to the universe of applications contemplated by plaintiff's claim." *Supreme Court of New Mexico*, 839 F.3d at 914. The relevant constitutional test for this claim, then, is whether the laws have a disproportional effect and whether the impact can be traced to a discriminatory purpose.

Plaintiff also alleges the laws deny him equal protection because they deny people seeking to work in prostitution the legal right to do so, while those working in other adult businesses such as strip clubs or escort services enjoy legal protection. Suppl. Compl. pp. 30–32 doc. 55. This claim is a facial challenge because it argues that all those seeking to work in prostitution are discriminated against under Utah law.

*Plaintiff's Free Association Claim is Analyzed Under a Facial Standard*

Plaintiff's Freedom of Association claim asks the Court to conclude that the First Amendment protects "the commercial exchange of private sexual activity . . . ." *Id*. at ¶ 110. As Plaintiff recognizes in his Complaint, such relief would apply to "many persons in the State of Utah, including Plaintiff's . . . ." Suppl. Compl ¶ 117 doc. 55. Accordingly, Plaintiff's challenge is facial in nature, and should be analyzed under the applicable constitutional standard.

*Plaintiff's Utah Constitutional Claims are Analyzed Under Facial Standards*

Plaintiff's fifth claim argues the Acts violate the Utah Constitution in the same way as they violate the United States Constitution. *Id*. at 34–35. If the Court reaches the merits of Plaintiff's Utah constitutional claims, the Court should conclude that the relief requested would be applicable to other individuals, and therefore apply facial review to the Acts under the Utah Constitution.

*Plaintiff's Vagueness Claim is Analyzed Under a Facial Standard*

Plaintiff's sixth claim argues the 2017 amendments to Utah's prostitution statutes are unconstitutionally vague. *Id*. at 35–37. Plaintiff contends Utah's vague prostitution laws promote the "dangers of arbitrary and discriminatory application." *Id*. These dangers are asserted broadly, with Plaintiff arguing that arbitrary enforcement of prostitution laws could affect not just brothels but "other businesses" such as escort services. This argument implies that the challenged law violates the Constitution in "virtually all" applications, not just "the particular circumstances of this case," and is therefore a facial challenge. *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007).

**4. Plaintiff's Substantive Due Process Claims Fail.**

A statute that does not burden a fundamental right is upheld under rational-basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007) (statute upheld "if it is rationally related to a legitimate government purpose or end."). Here, the Act is constitutional because it does not burden a fundamental right and is supported by a rational basis.

    A.  THE RELATIONSHIP BETWEEN PROSTITUTE AND CLIENT IS NOT PROTECTED BY THE DUE PROCESS CLAUSE.

Substantive due process, in addition to the freedoms protected by the Bill of Rights, extends protections to fundamental rights *Petrella v. Brownback*, 787 F.3d 1242, 1261 (10th Cir. 2015), *cert. denied*, 136 S. Ct. 588 (2015) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). "To qualify as 'fundamental,' a right must be 'objectively, deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 720–21).

Additionally, the Due Process Clause has been the source of protection for "certain kinds of highly personal relationships" and "certain kinds of personal bonds." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). The relationships and bonds that have been protected are characterized by how they "have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs." *Id.* But the Tenth Circuit has clearly held that the Due Process Clause protects no free-floating right to sexual intimacy. *See Seegmiller v. LaVerkin City*, 528 F.3d 762, 770-71 (10th Cir. 2008) ("nowhere in *Lawrence* does the Court describe the

11

right at issue in that case as a fundamental right or a fundamental liberty interest. It instead

applied rational basis review to the law and found it lacking.")

Plaintiff has sought to define prostitution as "the fundamental liberty interest in one's

own private sexual conduct . . . ." Suppl. Compl. p. 24 ¶ 90 doc. 55 However, as just noted, the

Tenth Circuit has foreclosed such a free-floating claim.  *See Seegmiller*, 528 F.3d at 770-71.

Another court, when faced with a similar case, determined that describing prostitution as a

fundamental liberty interest in sex was too broad, and instead defined the right in terms of the

relationship sought to be protected, stating that "this case challenges particular intimate conduct

within a specific context . . . ." *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*,

No. C 15-01007 JSW, 2016 WL 1258638, at *4 (N.D. Cal. Mar. 31, 2016); *see also Lawrence*,

539 U.S. at 567 ("[w]hen sexuality finds overt expression in intimate conduct with another

person, the conduct can be but one element in a personal bond that is more enduring."). The

interest at issue here is not the physical act of sexual intercourse, rather, the relationship between

one person paying another person for sex. *Glucksberg*, 521 U.S. at 722 ("we have a tradition of

carefully formulating the interest at stake in substantive-due-process cases."). A relationship

premised on purchasing sexual conduct has never been protected, and is actually the opposite of

the types of relationships that have been recognized as worthy of protection under the Due

Process Clause. *See, e.g., Lawrence*, 539 U.S. at 578 (distinguishing its holding from application

in the context of public conduct or prostitution); *Muth v. Frank*, 412 F.3d 808, 818 (7th Cir.

2005) (holding that, pursuant to *Lawrence*, there is no cognizable fundamental right to private

consensual sexual conduct); *Erotic Serv. Provider Legal Educ. & Research Project*, No. C 15-

01007 JSW, 2016 WL 1258638, at *4.

The relationship between a prostitute and client possesses few, if any, of the aspects of the "highly personal relationships" or "personal bonds" referenced by the Court in *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984), that are protected by the Due Process Clause. The relationship between prostitute and client lasts a short time, and only as long as the client is willing to pay the fee. *See IDK, Inc.*, 836 F.2d at 1193 (involving challenges to county regulations by escort services). A prostitute has little choice as to the identity and personal preferences of the clients that solicit sex. Prostitutes and clients are not involved in procreation, raising and educating children, cohabiting with relatives, or other family activities. *See id.* A prostitute may be involved with a large number of clients. "While we may assume that the relationship between [prostitute and client] is cordial and that they share conversation, companionship, and the other activities of leisure, we do not believe that a day, an evening, or even a weekend is sufficient time to develop deep attachments or commitments." *Id.* The relationship between prostitute and client is in fact the opposite of the types of relationships protected by the Fourteenth Amendment, and the Court should refuse to extend such protection in this case.[6]

### B.  UTAH'S LAWS CRIMINALIZING PROSTITUTION ARE RATIONALLY RELATED TO LEGITIMATE GOVERNMENT INTERESTS.

To satisfy the rational basis test, the Act "need only be rationally related to a legitimate government purpose." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) (quotation omitted). "[R]ational basis review is highly deferential toward the government's actions."

---

[6] The Supreme Court has specifically excluded prostitution when expanding the scope of relationships protected by the Due Process Clause. *Lawrence*, 539 U.S. at 560 ("This case does not involve minors, persons who might be injured or coerced, those who might not easily refuse consent, or public conduct or prostitution.")

*Seegmiller*, 528 F.3d at 772. "Governmental bodies have wide latitude in enacting social and economic legislation; the federal courts do not sit as arbiters of the wisdom or utility of these laws." *Allright Colorado, Inc. v. City & Cty. of Denver*, 937 F.2d 1502, 1512 (10th Cir. 1991) (quotation omitted). The Court "need not satisfy [itself] that the challenged rules will in fact further their articulated purposes; it is sufficient if the legislature could rationally have concluded that the purposes would be achieved." *Id.* (quotation omitted). Plaintiff must "overcome the presumption of rationality," *Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007), by negating "every conceivable basis which might support [the Acts] . . . ", *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (citation omitted).

Utah's ban on prostitution is rationally related to legitimate government interests. Prostitution is linked to trafficking in women and children. *Coyote Publ'g, Inc. v. Miller*, 598 F.3d at 600; *see* U.S. Dep't of State, The Link Between Prostitution and Sex Trafficking (Nov. 24, 2004), https://2001-2009.state.gov/r/pa/ei/rls/38790.htm;[7] Bureau of Justice Statistics, U.S. Dep't of Justice, Characteristics of Suspected Human Trafficking Incidents, 2008-2010 1, 3 (April 2011) (reporting that 82% of suspected incidents of human trafficking were characterized as sex trafficking, and more than 40% of sex trafficking involved sexual exploitation or prostitution of a child) https://www.bjs.gov/content/pub/pdf/cshti0810.pdf.

Prostitution creates a climate conducive to violence against women. *See United States v. Carter*, 266 F.3d 1089, 1091 (9th Cir. 2001); Melissa Farley, *Prostitution Trafficking, and*

---

[7] The facts in this section relating to the negative effects of prostitution may be judicially noticed, because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004) (Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment.).

*Cultural Amnesia: What We Must Not Know in Order to Keep the Business of Sexual Exploitation Running Smoothly*, 18 Yale J.L. & Feminism 109, 111 & *passim* (2006) (addressing pervasive violence in prostitution and concluding that "[r]egardless of prostitution's status (legal, illegal, zoned or decriminalized) or its physical location (strip club, massage parlor, street, escort/home/hotel), prostitution is extremely dangerous for women."); Sylvia A. Law, *Commercial Sex: Beyond Decriminalization*, 73 S. Cal. L. Rev. 523, 533 nn. 47–48 (2000) (reporting that a "study of 130 prostitutes in San Francisco found that 82% had been physically assaulted, 83% had been threatened with a weapon, [and] 68% had been raped while working as prostitutes," and that another study "demonstrate[ed] that violence is pervasive in the lives of all categories of women who sell sex for money").

Prostitution is linked to the transmission of AIDS and sexually transmitted diseases. *See, e.g.*, *Love v. Superior Court*, 226 Cal. App. 3d 736 (1990) (upholding mandatory AIDS testing and counseling for person convicted of soliciting where the Legislature "has determined that those who engage in prostitution activities represent a high-risk group in terms of their own health, in contracting AIDS, and in terms of the health of others, in spreading the virus"); *Northern Mariana Islands v. Taman*, 2014 WL 4050021, at *3 (N. Mar. I. 2014) (prostitutes pose a health risk for sexually transmitted diseases).

Utah also has a legitimate interest in deterring the commodification of sex. *See Coyote Publ'g, Inc.*, 598 F.3d at 603 (observing that the Thirteenth Amendment "enshrines the principle that people may not be bought and sold as commodities," and that restrictions on prostitution are driven by "an objection to their inherent commodifying tendencies – to the buying and selling of things and activities integral to a robust conception of personhood."); *People v. Grant*, 195 Cal.

App. 4th 107, 113–15 (2011) (holding that anti-pimping statute bore a rational relationship to the proper legislative goal of suppressing prostitution). The Acts are rationally related to legitimate government interests and does not violate Plaintiff's substantive due process rights.

Plaintiff's Complaint alleges that there is no rational basis in prohibiting prostitution or brothels. Suppl. Compl. p. 24 ¶ 91 doc. 55. Plaintiff argues that the State has an interest in regulating, rather than prohibiting, prostitution because it would protect citizens from scams, sexual diseases, and human trafficking. *Id*. Plaintiff argues that the State already has an STD problem, so that allowing brothels might help control the spread of disease. *Id*. p. 26 ¶ 93.

However, under rational basis review, even if Plaintiff's allegations are true, the question before the Court is not whether Plaintiff's or the State's basis is more rational, or whether the Acts are narrowly tailored, and not even whether "the challenged rules will in fact further their articulated purposes . . . ," the question for the Court to decide is whether "the legislature could rationally have concluded that the purposes would be achieved." *Allright Colorado, Inc.*, 937 F.2d at 1512.[8] Decreasing human trafficking, decreasing violence against women, decreasing the spread of STDs, and deterring the commodification of sex are all rational bases that support prohibiting prostitution and brothels in Utah.

### 5. Plaintiff's Equal Protection Claim Fails Because the Acts Are Neutral and There Is No Discriminatory Purpose Toward People with Disabilities.

Even if the Acts have a disproportional effect on disabled persons, as argued by Plaintiff, they do not violate the Equal Protection Clause because their alleged impact cannot be traced to a discriminatory purpose. *See Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979)

---

[8] The Court may take judicial notice of the fact that 49 of the 50 states in the Union have chosen to criminalize prostitution, with only Nevada leaving that decision to its counties to decide.

(discussing classifications based on gender and race). Because Plaintiff does not allege the Acts intended to discriminate against disabled persons, and because no such intent exists, Plaintiff's equal protection claim based on the Acts' alleged "implicit discrimination," Suppl. Compl. p. 28 ¶ 102 doc. 55, against disabled persons fails as a matter of law.

Second, Plaintiff argues that the State cannot allow some sexually oriented businesses but prohibit prostitution, and that women have a right to work in brothels. *Id.* ¶ 110. This argument fails as a matter of law. Plaintiff's argument that women have a right to work as prostitutes is properly analyzed under the Due Process Clause, and is done so below.[9]

Plaintiff's argument that the State has no rational basis for treating one class of businesses (brothels) differently than another class of similarly situated businesses (sexually oriented businesses such as strip clubs, escort services, and adult businesses), fails because, as described above, a great number of rational bases exist for the State to prohibit prostitution and brothels, and classifying businesses based on whether sexual intimacy is sold is not a suspect classification. *Feeney*, 442 U.S. at 272 ("When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern."). Nor is a fundamental right at issue, such that heightened scrutiny is warranted. *Seegmiller*, 528 F.3d at 770 ("the Court has never endorsed an all-encompassing right to sexual privacy . . ."). Accordingly, Plaintiff's equal protection claims fail as a matter of law.

---

[9] Plaintiff lacks standing to assert claims on behalf of possible future brothel employees, but Plaintiff's claim is analyzed here anyway.

**6. Plaintiff's Due Process Claim to a Right to Earn a Living as Sole Proprietor of a Brothel Fails Because Prostitution Is Illegal.**

Plaintiff's claim that he as the proprietor, or his possible future brothel employees have a right to earn a living as prostitutes fails because there is no state-law property interest in working in "the commercial exchange of sex." Suppl. Compl. p. 32 ¶ 111 doc. 55.

The Fourteenth Amendment establishes the individual right "to contract, to engage in any of the common occupations of life." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972). However, "[a] threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Id.* at 569.

Whether a property interest in employment exists is a matter of state law. *Bishop v. Wood*, 426 U.S. 341, 344 (1976). Utah law does not recognize a property interest in working in the commercial exchange of sex in any capacity—whether it be as a prostitute or sole proprietor of a brothel—and the Acts at issue here negate any such alleged interest.

"[T]he liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nonetheless subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1992).   A protectable liberty interest in employment arises only "where not affirmatively restricted by reasonable laws or regulations of general application." *Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995). A law placing restrictions on employment will be upheld so long as there is a legitimate state interest in regulating the trade or profession. *Williamson v. Lee Optical of Okla.*, 348 U.S. 483 (1955). As discussed above, Utah has an interest in regulating prostitution and brothels. Accordingly, Plaintiff's due process claim that he

or his future brothel employees have a right to work in the commercial sex industry fails as a matter of law.

**7.   There Is No Associational Right Between Prostitute and Client.**

Association for the purpose of sex is not protected by the First Amendment. *Arcara*, 478 U.S. at 704–05, 707; *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 224 (1990) (concluding that a 10-hour limitation on motel room rentals did not burden or "have any discernible effect on the sorts of traditional personal bonds" that the Court has protected), *holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004). Prostitutes are not hired for their conversational skills; they are hired for sex, and the Acts do not criminalize meeting with a prostitute.  They criminalize paying a prostitute for sex. *See IDK, Inc.*, 836 F.2d at 1195 ("the escort services make no claim that expression is a significant or necessary component of their activities. The services' advertisements included in the record do not tout their employees' skills in conversation, advocacy, teaching, or community service, and thus we assume that clients select their companions on the basis of other criteria.")

Because the association between a prostitute and a client is not expressive or protected by the First Amendment, Plaintiff's First Amendment freedom of association claim fails as a matter of law and should be dismissed with prejudice.

**8.   Plaintiff's Claims Under the Utah Constitution Should Be Dismissed.**

Plaintiff's state constitutional challenges likewise fail. The Eleventh Amendment bars these claims. "[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the State itself." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 117. Here, the State is the real, substantial

party in interest to plaintiff's challenge to the Acts. *See id.* at 92, 101. This Court's pendent jurisdiction does not extend to Plaintiff's state law claims. *Id.* at 118.

Alternatively, if the Court dismisses Plaintiff's federal claims, the Court should dismiss Plaintiff's state constitutional claims for lack of subject matter jurisdiction. *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997).

If the Court reaches the merits of Plaintiff's Utah constitutional claims, those claims are barred because in relation to prostitution, the Utah Constitution provides less protection than the United States Constitution. The Utah Supreme Court analyzes state constitutional issues under the primacy model, which analyzes issues under the state constitution before resorting to the federal constitution. *Am. Bush v. City of S. Salt Lake*, 2006 UT 40, ¶ 7, 140 P.3d 1235 (citing *West v. Thomson Newspapers*, 872 P.2d 999, 1004–07 (Utah 1994)). In interpreting the Utah Constitution, the Utah Supreme Court has stated that the drafters' intent must be ascertained. *State v. Hernandez*, 2011 UT 70, ¶ 8, 268 P.3d 822 (citing *American Bush*, 2006 UT 40 ¶ 12, 140 P.3d 1235). Because the best evidence of the drafters' intent is the constitutional text, analysis begins with the text itself. *Id.* (citations omitted).

Plaintiff's Supplemental Complaint fails to explain how the Utah Constitution provides more protection than the federal constitution, and Utah state court decisions support the conclusion that the relationship between prostitute and client, the right to earn a living as a prostitute, or the association between a prostitute and a client are less protected by the Utah Constitution than the United States Constitution. *See e.g.*, *American Bush*, 2006 UT 40 ¶ 2, 140

P.3d 1235 (nude dancing not protected by the Utah Constitution).[10]  Plaintiff has thus failed to

state a claim under the Utah Constitution.

### 9.  Utah's Prostitution Statutes Are Not Unconstitutionally Vague.

Laws violate due process when they are "so vague that [they] fail to give ordinary people

fair notice of the conduct" they punish, or are "so standardless that [they] invite arbitrary

enforcement." *Johnson v. United States* 135 S.Ct. 2551, 2556 (2015). Legislatures prevent

arbitrary enforcement of laws by "provid[ing] explicit standards for those who apply them."

*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). When determining whether a statute is

vague, a court starts with "the presumption that the statute comports with . . . federal due process

and must be upheld unless satisfied beyond all reasonable doubt that the legislature went beyond

the confines of the Constitution." *United States v. Welch*, 327 F.3d 1081, 1094 (10th Cir. 2003).

In *Grayned,* the Supreme Court declined to strike down as vague the language "disturbs

or tends to disturb the peace and good order of such school session or class thereof" in a

municipal ordinance. 408 U.S. at 108. The Plaintiff in *Grayned* argued that this language gave

police "too broad a discretion in determining whether conduct was proscribed." *Id.* at 109.  The

court disagreed, holding the statute was not vague because it included a standard for

enforcement, "whether normal school activity has been or is about to be disrupted," and was

"written specifically for the school context." *Grayned*, 408 U.S. at 112.

---

[10] Plaintiff also references Article 12 section 20 of the Utah Constitution, the "Free Market
Clause." Compl. p. 36 ¶ 124 doc. 1. However, the Free Market Clause prohibits monopolies, and
does not relate to one individual's attempt to obtain a business license. Utah Const. Art. 12 § 20;
*Summit Water Distribution Co. v. Summit Cty.*, 2005 UT 73, ¶ 50, 123 P.3d 437 (declining to
analyze whether Article 12 section 20 is self-executing).

Plaintiff concedes the Acts "obviously" apply to his "proposed business" and are not so vague that they fail to give fair notice. Suppl. Compl. p. 36 ¶ 127 doc. 55. Instead, Plaintiff argues the statute invites arbitrary enforcement because it permits law enforcement "to go after obvious brothels" but not after otherwise legal strip clubs and escort services that may be engaging in prostitution. *Id.*

Only one of the challenged statutes, Utah Code Ann. § 76-10-1304(1)(iii), applies to the operation of a brothel. The other three statutes pertain to the personal solicitation or exploitation of prostitutes. Therefore, Plaintiff has failed to state a claim for vagueness upon which relief can be granted with regard to these three statutes. Furthermore, under the *Grayned* standard the remaining statute is not vague. Like the *Grayned* ordinance, the statute specifically regulates prostitution and includes an explicit standard: whether the "place" in question is "used for prostitution or the promotion of prostitution." Utah Code Ann. § 76-10-1304(1)(iii). While a place that clearly holds itself out as a brothel may be a more obvious target for law enforcement, police nonetheless have a clear standard under which to enforce the law against an otherwise legal strip club or escort service, and businesses and people can understand what types of businesses or activities fall into that category. Therefore, because the law provides an explicit standard for enforcement, Plaintiff fails to state a claim upon which relief can be granted.

## CONCLUSION

Plaintiff's Supplemental Complaint fails as a matter of law, because the United States and Utah Constitutions do not protect prostitution as a profession, or a person's right, disabled or not, to pay another person for sex. Neither should the Court extend constitutional protection to the relationship between prostitute and client because that relationship is antithetical to the highly

personal relationships and personal bonds that are protected by the Due Process Clause. The State Defendants ask the Court to find that the Act is constitutional and dismiss Plaintiff's Complaint with prejudice.

DATED: October 3, 2017.

OFFICE OF THE UTAH ATTORNEY GENERAL


/s/ Greg Soderberg
DAVID N. WOLF
GREG SODERBERG
Assistant Utah Attorneys General
*Counsel for State Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on October 3, 2017, a true and correct copy of the foregoing **State Defendants' Motion to Dismiss Supplemental Complaint** was mailed via First Class Mail and by email to the following:

Russell Greer
689 Vine Street
Murray, UT 84107
E-mail: russmark@gmail.com
*Pro Se Litigant*

/s/ Mohamed I. Abdullahi

24