# EXHIBIT A

Erotic Services Provider Legal Education and Research Project v. Gascon

2018 WL 445461
Only the Westlaw citation is currently available.
United States Court of Appeals,
Ninth Circuit.

EROTIC SERVICE PROVIDER LEGAL EDUCATION AND
RESEARCH PROJECT; K.L.E.S.; C.V.; J.B., Plaintiffs-Appellants,

v.

George GASCON, in his official capacity as District Attorney for the City and County of San Francisco;
Edward S. Berberian, Jr., in his official capacity as District Attorney of the County of Marin; Nancy
E. O'Malley, in her official capacity as District Attorney for the County of Alameda; Jill Ravitch,
in her official capacity as District Attorney of the County of Sonoma; Xavier Becerra,[*] Attorney
General, in her official capacity as Attorney General of the State of California, Defendants-Appellees.

No. 16-15927
|
Argued and Submitted October 19, 2017 San Francisco, California
|
Filed January 17, 2018

**Synopsis**
**Background:** Former erotic service providers and a potential client brought § 1983 action against California Attorney General and district attorneys, seeking to enjoin and invalidate a California statute criminalizing prostitution, alleging that the statute violated the First and Fourteenth Amendments. The United States District Court for the Northern District of California, Jeffery S. White, J., dismissed for failure to state a claim. Providers and client appealed.

**Holdings:** The Court of Appeals, Restani, Circuit Judge, held that:

[1] statute does not violate due process;

[2] statute does not violate freedom of intimate association;

[3] statute does not violate the right to earn a living; and

[4] statute does not violate the freedom speech.

Affirmed.

Appeal from the United States District Court for the Northern District of California, Jeffrey S. White, District Judge, Presiding, D.C. No. 4:15-cv-01007-JSW

**Attorneys and Law Firms**

Henry Louis Sirkin (argued) and Brian P. O'Connor, Santen & Hughes LPA, Cincinnati, Ohio; D. Gill Sperlein, Law Offices of D. Gill Sperlein, San Francisco, California; for Plaintiffs-Appellants.

Sharon O'Grady (argued), Deputy Attorney General; Tamar Pachter, Supervising Deputy Attorney General; Douglas J. Woods, Senior Assistant Attorney General; Office of the Attorney General, San Francisco; California, for Defendants-Appellees.

Jerald L. Mosley, Law Offices of Jerald L. Mosley, Pasadena, California, for Amicus Curiae Children of the Night.

Allan B. Gelbard, Encino, California; Lawrence Walters, Walters Law Group, Longwood, Florida; Jennifer M. Kinsley, NKU Chase College of Law, Highland Heights, Kentucky; for Amici Curiae First Amendment Lawyers Association and Woodhull Freedom Foundation.

Melissa Goodman and Tasha Hill, ACLU Foundation of Southern California, Los Angeles, California; Elizabeth Gill, ACLU Foundation of Northern California; for Amici Curiae American Civil Liberties Union Foundation of Southern California, American Civil Liberties Union Foundation of Northern California, API Equality–LA, Bienestar, Black Women for Wellness, California Rural Legal Assistance Inc., California Women's Law Center, Equality California, Familia: Trans Queer Liberation Movement, Free Speech Coalition, Genders & Sexualities Alliance Network, Gender Justice Los Angeles, Justice Now, Los Angeles LGBT Center, National Center For Transgender Equality, Transgender, Gender–Variant, Intersex Justice Project, TransLatin @ Coalition, Transgender Law Center, Transgender Service Provider Network.

Carmina Ocampo, Lambda Legal Defense & Education Fund Inc., Los Angeles, California; Kara N. Ingelhart and Scott A. Schoettes, Lambda Legal Defense & Education Fund Inc., Chicago, Illinois; Hayley Gorenberg and Richard Saenz, Lambda Legal Defense & Education Fund Inc., New York, New York; for Amici Curiae Lambda Legal Defense and Education Fund, AIDS United, APLA Health, Center for HIV Law and Policy, GLBTQ Legal Advocates & Defenders, HIV Prevention Justice Alliance, National Alliance of State & Territorial AIDS Directors, National Center for Lesbian Rights, Positively Trans, Positive Women's Network-USA, San Francisco AIDS Foundation, Brad Sears (Executive Director, The Williams Institute), Sero Project, and Sex Workers Project at the Urban Justice Center.

Savanah Lawrence, National Center on Sexual Exploitation, Washington, D.C.; Patrick A. Trueman, National Center on Sexual Exploitation, Washington, D.C.; for Amici Curiae National Center on Sexual Exploitation, Covenant House California, Freedom from Exploitation (California), Coalition Against Trafficking in Women, Space International, Equality Now, Demand Abolition, Chicago Alliance Against Sexual Exploitation, Wichita State University Center for Combating Human Trafficking, Global Centurion Foundation, Survivors for Solutions, National Organization for Women in New York, and Sanctuary.

Before: Consuelo M. Callahan and Carlos T. Bea, Circuit Judges, and Jane A. Restani, [**] Judge.


# OPINION

RESTANI, Judge:

Plaintiff-appellant Erotic Service Provider Legal, Education & Research Project; K.L.E.S.; C.V.; J.B.; and John Doe (collectively, "ESP") appeal the district court's dismissal of their 42 U.S.C. § 1983 action. ESP claims that Section 647(b) of the California Penal Code, which criminalizes the commercial exchange of sexual activity, violates: (1) the Fourteenth Amendment substantive due process right to sexual privacy; (2) freedom of association under the First or Fourteenth Amendment; (3) the Fourteenth Amendment substantive due process right to earn a living; and (4) the First Amendment freedom of speech. We conclude the district court did not err in dismissing ESP's claims. Accordingly, we affirm.

## BACKGROUND

ESP includes three former "erotic service providers" who wish to perform sex for hire, and a potential client who wishes to engage an "erotic service provider" for such activity. On March 4, 2015, ESP filed a complaint seeking declaratory and injunctive relief against the district attorneys of the City and County of San Francisco, Marin County, Alameda County, Sonoma County, and the Attorney General of California (collectively, the "State") to enjoin and invalidate Section 647(b). The version of Section 647(b) in effect when this lawsuit was filed provides that:

**\*2**  [E]very person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

(b) Who solicits or who agrees to engage in or who engages in any act of prostitution. A person agrees to engage in an act of prostitution when, with specific intent to so engage, he or she manifests an acceptance of an offer or solicitation to so engage, regardless of whether the offer or solicitation was made by a person who also possessed the specific intent to engage in prostitution. No agreement to engage in an act of prostitution shall constitute a violation of this subdivision unless some act, in addition to the agreement, is done within this state in furtherance of the commission of an act of prostitution by the person agreeing to engage in that act. As used in this subdivision, "prostitution" includes any lewd act between persons for money or other consideration.

Cal. Penal Code § 647(b) (2015). ESP challenged the constitutionality of this statute, both on its face and as applied, for criminalizing the commercial exchange of consensual, adult sexual activity. The State promptly moved to dismiss for failure to state a claim upon which relief can be granted. The district court granted ESP leave to amend their complaint, however ESP declined to file an amended complaint. On May 23, 2016, the district court entered judgment granting the State's motion to dismiss with prejudice. ESP timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

 **[1]**  We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a decision granting a motion to dismiss for failure to state a claim. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012).

## DISCUSSION

In their briefing, Plaintiffs state that they have brought both an "as applied" and a "facial" challenge to Section 647(b). An "as applied" challenge is a claim that the operation of a statute is unconstitutional in a particular case, but not necessarily in all cases, while a "facial" challenge asserts the statute may rarely or never be constitutionally applied. 16 C.J.S., Constitutional Law § 243 (2017). The State contends ESP has no cognizable as-applied claim because there are no allegations that the individual plaintiffs are being prosecuted or threatened with prosecution. *See Hoye v. City of Oakland*, 653 F.3d 835, 857–58 (9th Cir. 2011) (denying an as-applied challenge because "the fact situation that [the plaintiff] [is] involved in here is the core fact situation intended to be covered by this [ ] statute, and it is the same type of fact situation that was envisioned by this court when the facial challenge was denied" (internal quotation marks omitted)). At the outset of oral argument, Plaintiffs stated that they "believe this is a facial attack," and that they are not attacking "how it is applied." Accordingly, ESP's challenge to Section 647(b) is reviewed as a facial challenge.

### I. Fourteenth Amendment Due Process

The first issue presented on appeal is whether Section 647(b) violates the Due Process Clause of the Fourteenth Amendment. If there is no fundamental liberty interest in private, consensual sex between adults that extends to

Erotic Service Provider Legal Education and Research Project v...., --- F.3d ---- (2018)

prostitution, then Section 647(b) must satisfy only the deferential rational basis standard of review. If, however, there is such a fundamental liberty interest, Section 647(b) must survive a higher level of scrutiny.

**\*3  [2]**  The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The fundamental rights protected by the Fourteenth Amendment's Due Process Clause extend to certain personal choices central to individual dignity and autonomy, including intimate choices defining identity and beliefs. *See, e.g.*, *Obergefell v. Hodges*, ––– U.S. ––––, 135 S.Ct. 2584, 2602–05, 192 L.Ed.2d 609 (2015) (right of same-sex couples to marry); *Eisenstadt v. Baird*, 405 U.S. 438, 453–54, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (right to contraception); *Griswold v. Connecticut*, 381 U.S. 479, 484–86, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (right to privacy). Further, in *Lawrence v. Texas*, the Supreme Court determined that the Due Process Clause protects the fundamental right to liberty in certain, though never fully defined, intimate conduct:

> Liberty protects the person from unwarranted government intrusions into a dwelling or other private places. In our tradition the State is not omnipresent in the home. And there are other spheres of our lives and existence, outside the home, where the State should not be a dominant presence. Freedom extends beyond spatial bounds. Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and *certain intimate conduct*.

539 U.S. 558, 562, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (emphasis added).

### A. Fundamental Liberty Interest

ESP's primary argument is that *Lawrence*, the Supreme Court case which ruled unconstitutional laws that prohibit homosexual sodomy, prohibits a state from criminalizing prostitution engaged in by adults. In support, ESP makes two related contentions: (1) *Lawrence* guarantees to consenting adults a fundamental liberty interest to engage in private sexual activity; and (2) the State cannot wholly outlaw a commercial exchange related to the exercise of such a liberty interest.

In response, the State argues that nothing in *Lawrence* supports or suggests a fundamental due process right to engage in prostitution. Moreover, the State argues the *Lawrence* Court's concern was not with sexual acts per se, but with sexual acts as part of a personal relationship, pointing to the statement in *Lawrence* that "[w]hen sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring." *Id.* at 567, 123 S.Ct. 2472.

*Lawrence* has not previously been interpreted as creating a liberty interest that invalidates laws criminalizing prostitution. *See e.g.*, *Doe v. Jindal*, 851 F.Supp.2d 995, 1000 n.11 (E.D. La. 2012) ("*Lawrence* does not speak to the solicitation of sex for money, and has little precedential force here."); *Lowe v. Swanson*, 639 F.Supp.2d 857, 871 (N.D. Ohio 2009) ("[I]t would be more correct to narrowly construe *Lawrence*, so as not to unnecessarily disturb the prohibitions which were not before the Supreme Court in *Lawrence*, such as adultery, prostitution ..."); *United States v. Thompson*, 458 F.Supp.2d 730, 732 (N.D. Ind. 2006) (explaining "it would be an untenable stretch to find that *Lawrence* necessarily renders (or even implies) laws prohibiting prostitution ... unconstitutional"); *United States v. Palfrey*, 499 F.Supp.2d 34, 41 (D.D.C. 2007) (explaining that invalidating laws criminalizing prostitution because of *Lawrence* "stretches the holding in *Lawrence* beyond any recognition"); *State v. Romano*, 114 Hawai'i 1, 155 P.3d 1102, 1110 (2007) (explaining that prostitution "is expressly rejected as a protected liberty interest under *Lawrence*"); and *State v. Thomas*, 891 So.2d 1233, 1236 (La. 2005) ("[T]he majority opinion in *Lawrence* specifically states the court's decision does not disturb state statutes prohibiting public sexual conduct or prostitution.").

**\*4**  As we have observed before, "the bounds of *Lawrence*'s holding are unclear." *In re Golinski*, 587 F.3d 901, 904 (9th Cir. 2009). The nature of the right *Lawrence* protects—be it a right to private sexual activity among consenting adults, or the right to achieve " 'a personal bond that is more enduring,' "—*Lawrence*, 539 U.S. at 567, 123 S.Ct. 2472, by the

use of private sexual conduct—is never stated explicitly in the opinion and has not been elaborated upon by the Supreme Court since. But whatever the nature of the right protected in *Lawrence,* one thing *Lawrence* does make explicit is that the *Lawrence* case "does not involve ... prostitution." *Lawrence,* 539 U.S. at 578, 123 S.Ct. 2472.

We have considered whether a fundamental due process right to engage in prostitution exists. In *IDK, Inc. v. Clark Cnty.,* 836 F.2d 1185, 1193 (9th Cir. 1988), we upheld a regulation which infringed upon the right of escorts and clients to associate with one another, and determined that the relationship between a prostitute and client is not protected by the due process clause of the Fourteenth Amendment.

ESP argues that *Lawrence* overruled *IDK* by establishing a fundamental right among consenting adults to engage in sexual activity in private. But, as already noted, *Lawrence* explicitly stated that *Lawrence* did not "involve ... prostitution." Absent clearer language from the Court regarding the nature of the right *Lawrence* actually does protect, we cannot rule that *IDK,* binding Ninth Circuit precedent, is no longer good law.

 **[3]**  Due to *IDK,* we conclude that laws invalidating prostitution may be justified by rational basis review, rather than the more searching review called for when a right protected by *Lawrence* is infringed.

### B. Rational Basis Standard of Review

 **[4]**   **[5]**   **[6]**   **[7]**   Rational basis review asks whether "there is a rational relationship between disparity of treatment and some legitimate government purpose." *Cent. State Univ. v. Am. Ass'n of Univ. Prof.,* 526 U.S. 124, 128, 119 S.Ct. 1162, 143 L.Ed.2d 227 (1999). Under the rational basis standard of review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne v. Cleburne Living Ctr. Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Rational basis review is highly deferential to the government, allowing any conceivable rational basis to suffice. *United States v. Hancock,* 231 F.3d 557, 566 (9th Cir. 2000). In defending a statute on rational basis review, the government "has no obligation to produce evidence to sustain the rationality of a statutory classification"; rather, "[t]he burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it." *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (internal quotation marks omitted).

 **[8]**   **[9]**   To determine whether the State's law can survive rational basis review, we apply a two-tiered inquiry. First, we must determine whether the challenged law has a legitimate purpose. *See Jackson Water Works, Inc. v. Pub. Util. Comm'n of Cal.,* 793 F.2d 1090, 1094 (9th Cir. 1986). Second, we address whether the challenged law promotes that purpose. *See id.* On rational basis review, the State carries a light burden, as "[l]egislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Communications,* 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

 **[10]**  ESP challenged Section 647(b) as follows: (1) there is no important governmental interest behind Section 647(b); and (2) Section 647(b) does not significantly further any such interest. We hold that the statute, however, does pass the two-tiered rational basis test. Section 647(b) has a legitimate purpose, as the State proffers specific and legitimate reasons for criminalizing prostitution in California, which include discouraging human trafficking and violence against women, discouraging illegal drug use, and preventing contagious and infectious diseases. Additionally, as the District Court concluded, the State provided adequate argument to establish that Section 647(b) promotes those purposes.

 ***5**  First, the District Court found an established link between prostitution and trafficking in women and children. *See Coyote Publ'g, Inc. v. Miller,* 598 F.3d 592, 600 (9th Cir. 2010); Bureau of Justice Statistics, U.S. Dep't of Justice, *Characteristics of Suspected Human Trafficking Incidents,* 2008–2010 1, 3 (April 2011) (reporting that 82% of suspected incidents of human trafficking were characterized as sex trafficking, and approximately 40% of suspected sex trafficking incidents involved sexual exploitation or prostitution of a child). Second, studies indicate prostitution creates a climate conducive to violence against women. *See United States v. Carter,* 266 F.3d 1089, 1091 (9th Cir. 2001); *Commercial*

*Sex: Beyond Decriminalization*, 73 S. Cal. L. Rev. 523, 533 nn.47–48 (2000) (reporting that a "study of 130 prostitutes in San Francisco found that 82% had been physically assaulted, 83% had been threatened with a weapon, [and] 68% had been raped while working as prostitutes"). Next, the District Court found a substantial link between prostitution and illegal drug use. *See Colacurcio v. City of Kent*, 163 F.3d 545, 554, 556 (9th Cir. 1998); Amy M. Young, et al., *Prostitution, Drug Use, and Coping with Psychological Distress*, J. Drug issues 30(4), 789–800 (2000) (describing a destructive spiral in which women engage in prostitution to support their drug habit and increase their drug use to cope with the psychological stress associated with prostitution). Lastly, prostitution is linked to the transmission of AIDS and other sexually transmitted diseases. Center for Disease Control & Prevention, HIV Risk Among Persons Who Exchange Sex for Money or Nonmonetary Items (updated Sept. 26, 2016); *available at* http://www.cdc.gov/hiv/group/sexworkers.html (stating that sex workers "are at increased risk of getting or transmitting HIV and other sexually transmitted diseases (STDs) because they are more likely to engage in risky sexual behaviors (e.g., sex without a condom, sex with multiple partners) and substance use").

While ESP maintains that the criminalization of prostitution makes erotic service providers more vulnerable to crimes, and does not significantly deter the spread of diseases, such assertions do not undermine the "rational speculation" found sufficient to validate the legislation under *Beach Communications*. ESP's claims may yet convince the California legislature to change its mind. But this court cannot change its mind for them. As indicated, Section 647(b) is rationally related to several important governmental interests, any of which support a finding of no constitutional violation under the Due Process Clause of the Fourteenth Amendment. For these reasons, the district court correctly held that the State "proffered sufficient legitimate government interests that provide a rational basis to justify the criminalization of prostitution in California."

## II. Freedom of Association

**[11]    [12]    [13]** Appellant's next challenge invokes the Fourteenth Amendment freedom of association. There are two distinct forms of freedom of association: (1) freedom of intimate association, protected under the Substantive Due Process Clause of the Fourteenth Amendment; and (2) freedom of expressive association, protected under the Freedom of Speech Clause of the First Amendment. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). While ESP's argument is framed as an issue of First Amendment freedom of speech, this issue is properly analyzed under the Fourteenth Amendment Substantive Due Process Clause. Any First Amendment claim is precluded, as indicated in Part IV. With regard to intimate association, "choices to enter into and maintain certain human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Id.* Consequently, intimate association receives protection as a fundamental element of personal liberty. *Id.* Such protection, however, extends only to "certain kinds of highly personal relationships". *See id.* at 618, 104 S.Ct. 3244.

**[14]** As noted above, we have already ruled that the relationship between a prostitute and a client does not qualify as a relationship protected by a right of association. [1] *IDK, 836 F.2d at 1193.* As we explained in that case, a prostitute's relationship with a client "lasts for a short period and only as long as the client is willing to pay the fee." *Id.* Therefore, the duration of the relationship between a prostitute and a client does not suggest an intimate relationship. Furthermore, the commercial nature of the relationship between prostitute and client suggests a far less selective relationship than that which previously has been held to constitute an intimate association. *Roberts*, 468 U.S. at 619–20, 104 S.Ct. 3244 (extending the right of intimate association to marriage, child bearing, child rearing, and cohabitation with relatives). Thus, we hold Section 647(b) does not violate the freedom of intimate or expressive association.

## III. Right to Earn a Living

**\*6    [15]** The third constitutional challenge is that Section 647(b) violates the Fourteenth Amendment right to earn a living. The fundamental right to make contracts is guaranteed by the Constitution, which forbids the government from arbitrarily depriving persons of liberty, including the liberty to earn a living and keep the fruits of one's labor. *See, e.g.,*

*Lowe v. S.E.C.*, 472 U.S. 181, 228, 105 S.Ct. 2557, 86 L.Ed.2d 130 (1985) (" 'It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose.' " (quoting *Dent v. W. Va.*, 129 U.S. 114, 121–22, 9 S.Ct. 231, 32 L.Ed. 623 (1889))).

[16]  Nonetheless, the district court properly dismissed ESP's claims that Section 647(b): (1) "severely infringes on [their] ability to earn a living through one's chosen livelihood or profession"; and (2) "unconstitutionally burdens the right to follow any of the ordinary callings in life; to live and work where one will; and for that purpose to enter into all contracts which may be necessary and essential to carrying out these pursuits." Despite ESP's attempts to interpret *Lawrence* as creating a liberty interest that invalidates prostitution laws, ESP's interpretation is misguided. As stated in *Lawrence*: "This case does not involve minors, persons who might be injured or coerced, those who might not easily refuse consent, or public conduct or prostitution." *Lawrence*, 539 U.S. at 560, 123 S.Ct. 2472. Furthermore, even if some protectable employment interest exists, Section 647(b) applies to every person and is punishable by a misdemeanor charge, so it can properly be considered a reasonable law of general application. *See Blackburn v. City of Marshall*, 42 F.3d 925, 941 (5th Cir. 1995) (stating protectable interests in employment arise only "where not affirmatively restricted by reasonable laws or regulations of general application"). We therefore hold there is no constitutional right to engage in illegal employment, namely, prostitution.

## IV. Freedom of Speech

[17]  [18]  [19]  [20]  The final issue presented on appeal is whether Section 647(b) violates the First Amendment freedom of speech. ESP argues that the statute improperly makes pure speech a criminal activity, as Section 647(b) prohibits solicitation of prostitution. Here, we are dealing with commercial speech. Speech is "commercial" if it does "no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Although the Constitution accords lesser protection to commercial speech than other constitutionally guaranteed expression, it still protects commercial speech from unwarranted governmental regulation. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). For commercial speech to receive First Amendment protection, however, it must: (1) concern lawful activity and not be misleading; (2) serve a substantial government interest; (3) directly advance the governmental interest asserted; and (4) be narrowly tailored. *Id.* at 566, 100 S.Ct. 2343. Restrictions on commercial speech are reviewed under the standard of intermediate scrutiny. *See id.* at 563–66, 100 S.Ct. 2343.

[21]  [22]  Therefore, we assess whether the speech regulated by Section 647(b), i.e. soliciting prostitution, satisfies the four aforementioned elements and thus constitutes protected commercial speech. *Central Hudson* specifies that if the regulated speech concerns illegal activity or is misleading, the First Amendment extends no protection and the analysis ends. *Id.* at 563–64, 100 S.Ct. 2343. Whether or not the speech regulated by Section 647(b) is misleading is not at issue in this case, thus we confine our discussion of this element to the legality of prostitution. As of 2010, forty-nine of the fifty states prohibited all sales of sexual services. *Coyote*, 598 F.3d at 600. [2]  Moreover, prostitution has not been a lawful activity in California since it was banned in 1872, and we have not invalidated the current version of Section 647(b) based on other constitutional grounds. On this basis alone, ESP's claim fails because commercially motivated speech that involves unlawful activity is not protected speech under the First Amendment. *See, e.g., State v. Roberts*, 779 S.W.2d 576, 579 (Mo. 1989) (en banc) (reasoning that words uttered as an integral part of the prostitution transaction do not have a lawful objective and are not entitled to constitutional protection).

*7  While the analysis need not proceed further given the unlawful activity at issue, for completeness we turn to the remaining steps of the *Central Hudson* test and ask whether the asserted governmental interest is substantial. ESP argues the State can assert no compelling or substantial interest justifying such a regulation of speech. The State contends that criminalizing the commercial exchange of sexual activity is a valid exercise of its police powers. We hold that the criminalization of prostitution is a valid exercise of California's police power and hence, the State may criminalize prostitution in the interest of the health, safety, and welfare of its citizens under the Tenth Amendment. *See, e.g., Roberts*,

779 S.W.2d at 579. Accordingly, it is left to the political branches to fix the boundary between those human interactions governed by market exchange and those not so governed. *Coyote*, 598 F.3d at 604. Banning the commodification of sex is a substantial policy goal that all states but Nevada have chosen to adopt. *Id.* at 600–01. We therefore conclude the interest in preventing the commodification of sex is substantial.

At step three of the *Central Hudson* test, we ask whether Section 647(b) "directly and materially advances" its asserted interest in limiting the commodification of sex. *See Greater New Orleans Broad. Ass'n, Inc. v. U.S.*, 527 U.S. 173, 188, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999). Section 647(b) directly and materially advances the State's interest in limiting such commodification by reducing the market demand for, and thus the incidence of, prostitution. Common sense counsels that soliciting prostitution tends to stimulate demand for those services, and conversely, criminalizing such speech tends to lessen the demand. *Coyote*, 598 F.3d at 608. Thus, reducing the demand for prostitution in turn limits the commodification of sex. *Id.* We reason that the State's substantial interest in limiting the commodification of sex is directly and materially advanced by Section 647(b).

 [23]  Finally, we assess whether Section 647(b)'s restrictions on speech are "more extensive than necessary" in light of the State's interests. *Central Hudson*, 447 U.S. at 566, 100 S.Ct. 2343. While "[t]he Government is not required to employ the least restrictive means conceivable, [ ] it must demonstrate narrow tailoring of the challenged regulation to the asserted interest—a fit that is not necessarily perfect, but reasonable ..." *Greater New Orleans Broad.*, 527 U.S. at 188, 119 S.Ct. 1923 (internal quotation marks omitted). Here the State has tailored its speech restrictions to attain a reasonable fit between ends and means because Section 647(b) prohibits only speech that invokes the illegal act of prostitution. Given the plain language of Section 647(b), we hold that the restrictions on soliciting prostitution are consistent with the First Amendment. In sum, Section 647(b) does not violate the First Amendment freedom of speech because prostitution does not constitute protected commercial speech and therefore does not warrant such protection.

## CONCLUSION

For the foregoing reasons, the district court's judgment dismissing ESP's action is **AFFIRMED.**

### All Citations

--- F.3d ----, 2018 WL 445461

Footnotes

| | |
|---|---|
| * | Xavier Becerra is substituted for his predecessor, Kamala Harris. Fed. R. App. P. 43(c)(2). |
| ** | The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation. |
| 1 | Of course, we are bound by our precedent unless overruled by an en banc panel or clearly abrogated or overruled by the Supreme Court. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). |
| 2 | Despite Nevada's decision to opt for partial legalization, it too has taken significant steps to limit prostitution, including the total ban on prostitution in its largest population center, Clark County, home to 72 percent of the state's population. *Id.* at 600–01 & n.11. |

**End of Document**                                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.